HOPKINS v CITY OF MIDLAND

Docket No. 86540. Submitted August 11, 1986, at Lansing. Decided March 3, 1987.

Plaintiff, Raymond Hopkins, was employed by defendant, City of Midland. When plaintiff's position was eliminated, defendant failed to promote plaintiff to a newly created position having duties similar in part to those of plaintiff's old position. Plaintiff's union then submitted a grievance to arbitration based on this failure to promote. The arbitrator found in defendant's favor. Plaintiff then initiated the instant action in the Midland Circuit Court. Count I alleged violation of the Whistleblowers' Protection Act by discriminating against plaintiff in refusing to promote him because of his complaints to the Michigan Department of Labor. Count II alleged that the failure to promote was in retaliation for remarks made by the plaintiff before the city commission. Plaintiff alleged that defendant had thus abridged plaintiff's right to free speech under the United States and Michigan Constitutions. Defendant moved for summary disposition. The circuit court, Tyrone Gillespie, J., granted defendant's motion holding that defendant's actions in failing to promote plaintiff could not constitute retaliation unless plaintiff had been denied a contract right. The court stated that the arbitrator's decision was determinative of plaintiff's rights under the collective bargaining agreement and was the law of the case. The court found that under the collective bargaining agreement, plaintiff had only a subjective expectancy of promotion to the newly created position, not a contract right. Therefore, the circuit court found that no discrimination or retaliation had

REFERENCES

Am Jur 2d, Constitutional Law §§ 496 *et seq.*

Am Jur 2d, Labor and Labor Relations §§ 827 *et seq.;* 914.

The Supreme Court and right to free speech and press. 16 L Ed 2d 1053.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.

See also the annotations in the Index to Annotations under Promotion of Employee.

occurred within the meaning of either the Whistleblowers' Protection Act or the First Amendment. Plaintiff appealed.

The Court of Appeals *held:*

1. Plaintiff's free speech claims were not conclusively determined by arbitration and thus could be litigated in the instant action. Plaintiff's failure to raise his Whistleblowers' Protection Act claim at arbitration does not preclude its consideration by the Court of Appeals.

2. The Legislature intended the Whistleblowers' Protection Act to be judicially enforceable. In the absence of a clear agreement to arbitrate whistleblower claims, the Court of Appeals determined that it would not accord preclusive effect to plaintiff's failure to submit the whistleblower issue to arbitration.

3. The circuit court erred by requiring that plaintiff be denied a contract right before he could claim discrimination or retaliation in defendant's failure to promote him. No such requirement exists under the act. Even denial of a subjective expectancy of promotion can be improper discrimination if done for the wrong reasons, such as retaliation for the employee's engaging in conduct protected by the act.

4. A plaintiff must prove the following to establish a prima facie case of retaliation under the Whistleblowers' Protection Act in a failure to promote case: (1) that plaintiff was engaged in protected activity as defined by the act; (2) that plaintiff was subsequently not promoted; and (3) that a causal connection exists between the protected activity and the failure to promote. Plaintiff has alleged a prima facie case sufficient to withstand a summary disposition motion. Plaintiff has stated a claim upon which relief can be granted. Genuine issues of material fact relating to the reasons for defendant's failure to promote plaintiff remain in dispute.

5. Should defendant produce evidence on remand that dispels the inference of retaliation by establishing the existence of a legitimate reason for not promoting plaintiff, the pretext stage of the analysis will be reached and the question of mixed motive, i.e., retaliation plus a legitimate business reason, must be considered. An employee may meet the burden of showing pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

6. Summary disposition was improperly granted in regard to Count II. It is not necessary that plaintiff be denied a contract right. Denial of even a subjective expectancy of promotion can

be improper if done in retaliation for a public employee's exercise of free speech on matters of public concern. This is a question of law to be decided by the trial court on remand. To the extent that plaintiff's speech involved matters of public concern, the circuit court on remand must balance the competing interests of plaintiff and defendant to determine the extent of plaintiff's rights under the First Amendment and Const 1963, art 1, § 5. In the event that defendant argues on remand that retaliation for plaintiff's exercise of free speech was not the actual reason for failing to promote plaintiff, a shifting burden of proof and pretext analysis will come into play.

Reversed and remanded.

1. ARBITRATION — SCOPE OF ARBITRATION.

An arbitrator can only bind the parties on issues that they have agreed to submit to arbitration; an arbitrator lacks the power to resolve an issue not presented for arbitration.

2. LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — JUDICIAL ENFORCEMENT.

The Michigan Legislature intended the Whistleblowers' Protection Act to be judicially enforceable (MCL 15.361 *et seq.;* MSA 17.428[1] *et seq.*).

3. LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — ARBITRATION.

The Whistleblowers' Protection Act creates rights belonging to individual employees, not collectively represented groups; the substantive protections of the act do not depend on whether an employee is subject to a collective bargaining agreement; the Court of Appeals will not accord preclusive effect to a plaintiff's failure to submit a whistleblower claim to arbitration in the absence of a clear agreement to arbitrate such claims (MCL 15.361 *et seq.;* MSA 17.428[1] *et seq.*).

4. LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT.

The Whistleblowers' Protection Act does not require that an employee be denied a contract right before he can claim discrimination or retaliation in his employer's failure to promote him; even denial of a subjective expectancy of promotion can be improper discrimination if done for the wrong reasons, such as retaliation for the employee's engaging in conduct protected by the act.

5. LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — FAILURE TO PROMOTE.

A plaintiff must prove the following to establish a prima facie

case charging failure to promote in violation of the Whistle-blowers' Protection Act: (1) that plaintiff was engaged in protected activity as defined by the act; (2) that plaintiff was subsequently not promoted; and (3) that a causal connection exists between the protected activity and the failure to promote (MCL 15.361 *et seq.;* MSA 17.428[1] *et seq.*).

6. LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — FAILURE TO PROMOTE.

Retaliation may be inferred in a failure to promote case under the Whistleblowers' Protection Act from a showing that a qualified member of a protected class was not promoted and that the employer continued to seek persons with his or her qualifications for the position; should the employer produce evidence that dispels the inference of retaliation by establishing the existence of a legitimate reason for not promoting the employee, the pretext stage of the analysis will be reached and the question of mixed motive, retaliation plus a legitimate business reason, must be considered.

7. LABOR RELATIONS — WHISTLEBLOWERS' PROTECTION ACT — FAILURE TO PROMOTE.

An employee may meet the burden of showing pretext in a failure to promote case under the Whistleblowers' Protection Act either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence (MCL 15.361 *et seq.;* MSA 17.428[1] *et seq.*).

8. CONSTITUTIONAL LAW — FREE SPEECH — MATTERS OF PUBLIC CONCERN — LABOR RELATIONS.

The determination of whether an employee's speech addresses a matter of public concern considers the content, form and context of the given statement as revealed by the whole record; the inquiry is one of law, not fact.

9. CONSTITUTIONAL LAW — FREE SPEECH — LABOR RELATIONS — PUBLIC EMPLOYEES — FAILURE TO PROMOTE.

It is not necessary that a public employee be denied a contract right before he may bring an action alleging that his employer's failure to promote him was in retaliation for plaintiff's exercise of the right to free speech in the form of public comments about a matter of public concern; denial of even a subjective expectancy of promotion can be improper if done in retaliation for a public employee's exercise of free speech on matters of public concern (US Const, Am I; Const 1963, art 1, § 5).

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz* and *William F. Young*), for plaintiff.

*John J. Rae,* for defendant.

Before: DANHOF, C.J., and SHEPHERD and D. L. HOBSON,* JJ.

SHEPHERD, J. This case interprets the Whistle-blowers' Protection Act and, more specifically, addresses the following issues:

(a) What is the relationship between the act and the collective bargaining process including the arbitration of labor grievances?

(b) Must an employee be denied a contract right before he or she may invoke the protection of the act?

(c) What facts must be established in order to state a prima facie case under the act?

We also address the rights of municipal employees who have had their employment status adversely affected as a result of exercising their rights of free speech under the United States and Michigan Constitutions.

After plaintiff's position with defendant city was eliminated, defendant failed to promote plaintiff to a newly created position having duties similar in part to those of plaintiff's old position. Plaintiff's union submitted a grievance to arbitration based on this failure to promote. The arbitrator found in defendant's favor. Plaintiff subsequently initiated the instant action in Midland Circuit Court alleging in Count I that, contrary to the Whistleblowers' Protection Act, MCL 15.361 *et seq.;* MSA 17.428(1) *et seq.,* defendant failed to promote him in retaliation for plaintiff's having reported vari-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

ous safety violations to state authorities. Count II alleged that defendant failed to promote plaintiff in retaliation for his exercise of free speech on matters of public concern. The circuit court granted summary disposition for defendant.

We hold that plaintiff's failure to submit these claims to arbitration does not act as res judicata or collateral estoppel to bar the instant suit. Even an adverse arbitral decision would not bar plaintiff's subsequent litigation of his free speech claims. The Legislature intended judicial enforcement of the rights created by the Whistleblowers' Protection Act under the circumstances of this case.

We reverse the grant of summary disposition on Count I, finding that plaintiff has stated a prima facie case of discrimination under the Whistleblowers' Protection Act requiring further proceedings. We also reverse the grant of summary disposition on Count II, finding that the circuit court failed to determine if plaintiff's statements were on matters of public concern, rather than involving only a personal dispute over the elimination of plaintiff's position.

I

Plaintiff has been employed by defendant since May, 1979. Initially, he worked as a plumbing cross-connection inspector, a position he held until June, 1982. Plaintiff has been described as an "activist," and in May, 1982, he complained to the Michigan Department of Labor's Bureau of Safety and Regulation, alleging safety violations in defendant's old water plant. The Board of Health and Safety Compliance and Appeals investigated plaintiff's allegations and issued a citation to defendant in June, 1982, for various safety violations. Plaintiff wrote to the Bureau of Safety and Regulation

again in November, 1982, complaining that its investigation had been inadequate because safety violations still existed at defendant's water treatment plant.

By the time plaintiff wrote the second letter, he had changed jobs. In June, 1982, defendant eliminated the job of plumbing cross-connection inspector for budget reasons. Based on plaintiff's seniority, he was allowed to "bump" into a position as an engineering aide, though it paid $6,000 a year less than his previous position. On June 21, 1982, plaintiff addressed the Midland City Commission concerning the personnel changes in connection with defendant's new budget. In his speech, plaintiff questioned the "integrity and backbone" of defendant's supervisors. Defendant's elimination of the cross-connection inspector position also prompted plaintiff to have his collective bargaining representative, the Midland Municipal Employees Association, file an unfair labor practice charge with the Michigan Employment Relations Commission, alleging that defendant's action in eliminating plaintiff's position constituted a violation of the public employment relations act and was in retaliation for plaintiff's union activities. On April 12, 1983, the MERC adopted the decision and recommended order of the hearing officer who found that defendant had not violated PERA.

Defendant subsequently combined the position of plumbing cross-connection inspector, plaintiff's former job, with the position of heating and mechanical inspector to create the new position of plumbing/heating/mechanical inspector. An opening for the new position occurred in 1983, but, although plaintiff was qualified for the position, defendant offered it to Larry Martin in October of that year. After contacting the Department of Licensing and Regulation, plaintiff discovered that Martin lacked

the proper plumbing license necessary for the job. After this was brought to the attention of defendant's Director of Personnel, Martin withdrew his employment application. Plaintiff then reapplied for the job. He was later notified by defendant that another person had been hired for the job.

As a result of defendant's denial of plaintiff's application for the job opening on both occasions, plaintiff filed grievances with his collective bargaining representative, alleging that defendant violated the collective bargaining agreement between plaintiff's union and defendant in three respects: (1) by failing to "reinstate" plaintiff to the position of plumbing/heating/mechanical inspector; (2) by refusing to place plaintiff in that position because of his union affiliation and activities; and (3) by failing to give plaintiff appropriate priority over candidates with no previous city employment. Plaintiff's grievances were submitted to arbitration by his union. On November 16, 1983, the arbitrator denied plaintiff's grievances, finding that defendant's decision to deny plaintiff a promotion to the position of plumbing/heating/mechanical inspector was not a violation of the collective bargaining agreement. The arbitrator did not decide whether a statement by defendant's agent, Herb Weirauch, that he had considered plaintiff's comments before the city commission when deciding to deny plaintiff's application, was a violation of the contract.

On December 20, 1983, plaintiff sued defendant in circuit court. Plaintiff's second amended complaint contained two counts. Count I alleged that defendant had violated the Whistleblowers' Protection Act by discriminating against plaintiff in refusing to promote him because of plaintiff's complaints to the Michigan Department of Labor. Count II alleged that defendant's failure to pro-

mote plaintiff was in retaliation for plaintiff's remarks before the city commission. Plaintiff alleged that defendant had thus abridged plaintiff's right to free speech under the United States and Michigan Constitutions.

Defendant moved for summary disposition under MCR 2.116(C)(4) (lack of subject matter jurisdiction), MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10) (no genuine issue of material fact). Arguments were included to the effect that the arbitrator's decision was res judicata or that collateral estoppel applied as to the propriety of defendant's hiring procedures for the new position. The circuit court found that defendant's actions in failing to promote plaintiff could not constitute retaliation unless plaintiff had been denied a contract right. The court stated that the arbitrator's decision was "determinative of [plaintiff's] rights under the collective bargaining agreement and the law of the case." The court found that, under the collective bargaining agreement, plaintiff had only a "subjective expectancy" of promotion to the plumbing/heating/mechanical inspector position, not a contract right. Therefore, the circuit court found that no discrimination or retaliation had occurred either within the meaning of the act or the First Amendment. Accordingly, the circuit court granted summary disposition for defendant.

II

We must initially address the relationship of the arbitrator's decision to plaintiff's claims. The circuit court did not squarely address that portion of defendant's summary disposition motion raising the issue that the arbitrator's decision was res judicata nor did it address the issue of collateral estoppel. There is some hint in the circuit court's

use of the term "law of the case" that the court may have found at least certain portions of the arbitrator's decision determinative or preclusive. Moreover, the parties have addressed the issue on appeal.

Early authority stated that an arbitration award is res judicata in a given case. *Lumbermen's Mutual Casualty Co v Bissell*, 220 Mich 352, 354; 190 NW 283 (1922). An arbitrator, however, can only bind the parties on issues that they have agreed to submit to arbitration. *Port Huron Area School Dist v Port Huron Ed Ass'n*, 426 Mich 143, 152, n 8; 393 NW2d 811 (1986). An arbitrator lacks the power to resolve an issue not presented for arbitration. *Lansing School Dist v Lansing Schools Ed Ass'n*, 142 Mich App 664, 669; 370 NW2d 11 (1985).

In the course of the arbitrator's findings, he extensively discussed the methods by which the new plumbing/heating/mechanical inspector was chosen. Weirauch, head of defendant's building department, conducted the interviews and actually made the selection. The arbitrator stated that part of the union's allegations concerned Weirauch's consideration of plaintiff's statements before the city commission. According to the arbitrator, Weirauch was aware of the statements and did not know if they influenced him, but also testified that such statements could not help but give one a negative feeling. Even though the statements were not on Weirauch's mind when he made the decision, they probably had an "unfavorable influence." Even considering this information, however, the arbitrator could not conclude that Weirauch acted incorrectly or had inadequate reasons for his choice. The arbitrator noted that, while all applicants for the position were qualified, Weirauch believed the two individuals he chose over plaintiff

were more qualified and demonstrated better public relations skills.

The arbitrator made these findings in the face of allegations that plaintiff was not promoted because of his union activities. Plaintiff's statements to the city commission were thus only considered in that context. None of the three issues submitted to the arbitrator concerned defendant's alleged failure to promote plaintiff because he "blew the whistle" or exercised his right of free speech. The arbitrator's finding that the failure to promote plaintiff did not result from his union activities could not be res judicata of the issues in the instant case. In particular, the arbitrator's finding that the decision not to promote plaintiff was based on adequate and proper reasons applies only to those allegations arbitrated and does not govern the allegations in the instant case. The question remains, however, whether plaintiff could have arbitrated the instant claim and is now precluded from doing so by the broad rule of res judicata barring claims which could have been litigated but were not. See *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 160; 294 NW2d 165 (1980).

Several United States Supreme Court opinions are instructive on this issue. In *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974), the petitioner alleged that he was discharged because of racial discrimination. An arbitrator ruled that the petitioner had been discharged for just cause, making no reference to the petitioner's claim of racial discrimination. During the arbitration proceeding, the petitioner filed a charge under Title VII of the Civil Rights Act, 42 USC 2000e *et seq.,* alleging racial discrimination. The federal district court eventually granted summary judgment for the respondent, finding that the racial discrimination claim had been submit-

ted to the arbitrator and resolved adversely to the petitioner. The court concluded that the petitioner, having voluntarily elected to pursue his grievance to arbitration under the nondiscrimination clause of the collective bargaining agreement, was bound by the arbitral decision and precluded from suing his employer under Title VII.

A unanimous United States Supreme Court disagreed, finding that Title VII's purpose and procedures strongly suggested that an individual does not forgo a private cause of action by first pursuing a grievance to final arbitration under a collective bargaining agreement. The Court found the election of remedies doctrine inapplicable to a lawsuit asserting independent statutory rights distinctly separate from contractual rights. 415 US at 49-50. The aggrieved employee was determined to be free to proceed in both forums, even if the arbitrator explicitly ruled on the Title VII issue.

A similar result was reached in *Barrentine v Arkansas-Best Freight System, Inc,* 450 US 728; 101 S Ct 1437; 67 L Ed 2d 641 (1981). In that case, truckdrivers filed labor grievances which were rejected by a joint grievance committee. The truckdrivers then filed a federal action under the Fair Labor Standards Act, 29 USC 201 *et seq.* The Court held that the FLSA action was not barred by the prior submission to arbitration. The FLSA was designed to give protection to individual workers, in contrast to the Labor Management Relations Act which encouraged employees to promote their interests collectively. FLSA rights cannot be abridged by contract or otherwise waived and, as congressionally granted rights, take precedence over conflicting provisions in a collective bargaining agreement. 450 US at 739-741. The *Barrentine* Court offered several important reasons why arbitration should not preclude a later FLSA action.

First, a union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support even meritorious employee claims in arbitration after the union balanced individual and collective interests. Second, the Court noted that "the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land." 450 US at 743. Resolution of complex public policy issues thus may not be within the arbitrator's competence. Even when competent to address such issues, an arbitrator may be limited by the collective bargaining agreement to rule in a fashion inimical to the public policies underlying the FLSA. Finally, arbitrators are often powerless to grant the range of relief available under a statutory scheme such as the FLSA. 450 US at 742-745.

Most recently, the United States Supreme Court addressed the issue in *McDonald v West Branch,* 466 US 284; 104 S Ct 1799; 80 L Ed 2d 302 (1984). After an adverse arbitral decision, the petitioner filed a 42 USC 1983 action against the city and several city officials, alleging that he was discharged for exercising his rights to free speech, freedom of association and freedom to petition the government for redress of grievances. A federal jury returned a verdict against one city official. The Court of Appeals for the Sixth Circuit reversed, reasoning that the arbitrator had considered the reasons for the petitioner's discharge and that his First Amendment claims were barred by res judicata and collateral estoppel. A unanimous Supreme Court reversed, rejecting the argument that the full faith and credit statute, 28 USC 1738, applied to arbitration, which was not a judicial proceeding. 466 US at 287-288. Reaffirming the principles and reasoning of *Alexander* and *Barrentine,* the Court concluded that a judicially created

rule of preclusion was similarly inapplicable to a 42 USC 1983 action. Congress, creating a cause of action, intended it to be judicially enforced. 466 US at 290-292.

It is clear under *McDonald* that the instant plaintiff's free speech claims were not conclusively determined by arbitration and could be litigated in the instant action. Nor does plaintiff's failure to raise his Whistleblowers' Protection Act claim at arbitration preclude its consideration now.

The federal causes of action involved in *Alexander, Barrentine,* and *McDonald* are all quite analogous to the cause of action created in the act. Just as Congress intended Title VII, the FLSA, and 42 USC 1983 to be judicially enforceable, the Michigan Legislature similarly intended the act to be judicially enforceable. The act specifically creates a "civil action." MCL 15.363; MSA 17.428(3). It provides a full panoply of legal and injunctive remedies including reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, and actual damages, as well as costs including reasonable attorney and witness fees. MCL 15.364; MSA 17.428(4). The act also creates a civil fine for violators of the act. MCL 15.365; MSA 17.428(5). These provisions exceed the typical scope of arbitration relief.

The act was enacted in 1980 and has not been extensively discussed by the courts of this state. A federal court, however, in *Melchi v Burns International Security Services, Inc,* 597 F Supp 575, 581 (ED Mich, 1984), concluded that the act "seeks to protect the integrity of the law by removing barriers to employee efforts to report violations of the law." We agree with this statement. We also believe, however, that inherent in the act is a purpose to protect the public by protecting employees who report violations of laws and regulations. To

do so, the act creates rights belonging to individual employees, not collectively represented groups. The substantive protections of the act do not depend on whether an employee is subject to a collective bargaining agreement. On the other hand, the arbitration proceeding here was brought by plaintiff's union, as is the usual case, to assert rights created under a collective bargaining agreement. A union may still be representing an employee fairly even if it is not required to submit meritorious claims such as those provided by the act to arbitration. Thus, a civil action may be required to achieve the act's goals.

A similar issue under the act was recently presented to this Court in *Tuttle v Bloomfield Hills School Dist,* 156 Mich App 527; 402 NW2d 54 (1986). In *Tuttle,* the plaintiff alleged that he had been suspended and threatened with discharge for reporting possible illegal activities of certain school board employees to the school board. The trial court granted summary disposition of the plaintiff's Whistleblowers' Protection Act action in favor of the defendant after concluding that the plaintiff was required to arbitrate the dispute under a collective bargaining agreement. This Court reversed, noting that the plaintiff sought "to assert a statutory right that has been guaranteed to employees in this state." 156 Mich App at 531. The Court found nothing in the particular collective bargaining agreement before it rendering claims under the act exclusively arbitrable. Thus, the plaintiff was not bound by the negotiated grievance procedure. 156 Mich App at 532. It appears that the plaintiff in *Tuttle* had actually submitted the whistleblower claim to arbitration and that the arbitrator found in favor of the employer. The res judicata effect of this adverse arbitral decision was apparently not raised on

appeal. 156 Mich App at 530, n 2. Nonetheless, we find that the views and reasoning expressed in *Tuttle* support our holding here.

The act expressly provides that it "shall not be construed to diminish or impair the rights of a person under any collective bargaining agreement." MCL 15.366; MSA 17.428(6). Our holding does not do so. The union and the employer could have contractually agreed to arbitrate this issue had they chosen to do so. Had such been the case, we would have been faced with the question of whether the deference to the collective bargaining rights of both employer and employee expressed in MCL 15.366; MSA 17.428(6) would prevent subsequent litigation of the arbitrator's decision on the whistleblower issue. The policy expressed in MCL 15.366; MSA 17.428(6) might then distinguish these state statutory rights from those federal statutory rights discussed in *Alexander, Barrentine,* and *McDonald* which could not be arbitrated to finality. We need not decide that question now.[1] In the absence of a clear agreement to arbitrate whistleblower claims, we will not accord preclusive effect to plaintiff's failure to submit the issue to arbitration.[2] Arbitral finality exists to protect collective bargaining rights. Our decision here protects the public in the manner intended by the

---

[1] The *Tuttle* Court also rejected any claim that it had diminished the employer's rights under the collective bargaining agreement, contrary to MCL 15.366; MSA 17.428(6), since the dispute did not arise under the terms of the bargaining agreement. 156 Mich App at 532-533. *Tuttle* declined to decide whether an employee is limited to the collective bargaining agreement grievance mechanism if that agreement also expressly protects employees against disciplinary actions taken in retaliation for whistleblowing activities. 156 Mich App at 533.

[2] We note that another panel of this Court has reached the same conclusion for the wages and fringe benefits act, MCL 408.471 *et seq.;* MSA 17.277(1) *et seq.,* by similar reasoning. *Admiral Merchants Motor Freight, Inc v Dep't of Labor,* 149 Mich App 344, 350-353; 386 NW2d 193 (1986).

Legislature in the Whistleblowers' Protection Act, but in no way interferes with the collective bargaining process.

## III

Having addressed the relationship between arbitration and the Whistleblowers' Protection Act, we now hold that the circuit court erred by granting summary disposition for defendant on plaintiff's whistleblower claim. In particular, the circuit court erred by requiring that plaintiff be denied a contract right before he could claim discrimination or retaliation in defendant's failure to promote him. No such requirement exists under the act.

The heart of the act is found at MCL 15.362; MSA 17.428(2):

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

The statute is very broad in its coverage. Plaintiff's claim that defendant failed to promote him falls within the category of otherwise discriminating against an employee regarding the terms of plaintiff's employment. The statute does not require that a contractual right be violated. Even

denial of a "subjective expectancy" of promotion can be improper discrimination if done for the wrong reasons, such as retaliation for the employee's engaging in conduct protected by the act.

No Michigan cases have set out the requirements for recovery. The act was interpreted in *Melchi, supra,* a whistleblowers' discharge case in federal court in which the *Melchi* court sat as trier of fact. Recognizing the lack of guidance from Michigan courts, the federal court turned to analogous provisions of the Civil Rights Act, MCL 37.2701; MSA 3.548(701), and Title VII. For the case of retaliatory discharge, the *Melchi* court adopted the framework of *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 252-256; 101 S Ct 1089; 67 L Ed 2d 207 (1981). First, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action. Third, if the defendant carries his burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for discrimination. 597 F Supp at 581-582.

*Melchi* adopted a three-part test for establishing a prima facie case of retaliation under the act in a discharge case. We believe that, with a slight modification of language, this test is also appropriate in a failure to promote case. Thus, plaintiff must prove: (1) that plaintiff was engaged in protected activity as defined by the act; (2) that plaintiff was subsequently not promoted; and (3) that a causal connection exists between the protected activity and the failure to promote. See 597 F Supp at 582.

*Melchi* observed that, in a failure to hire case,

causation may be inferred from a showing that a qualified member of a protected class was not hired and that the employer continued to seek persons of his or her qualifications. Something analogous is found in the instant case. It appears the plaintiff was qualified for the position. After plaintiff discovered that the first person chosen to fill the inspector position was unqualified, defendant filled the position with someone other than plaintiff. Plaintiff alleged that he registered complaints with the Bureau of Safety and Regulation concerning violations of various safety statutes. Accordingly, we believe that plaintiff has alleged a prima facie case sufficient to withstand a summary disposition motion. While it is unclear what subrule the circuit court relied on in granting summary disposition, we believe plaintiff has stated a claim upon which relief can be granted. Moreover, genuine issues of material fact relating to the reasons for defendant's failure to promote plaintiff remain in dispute. We reverse the grant of summary disposition on this question and remand for further proceedings.

Should defendant produce evidence that dispels the inference of retaliation by establishing the existence of a legitimate reason for not promoting plaintiff, the pretext stage of the analysis will be reached and the question of mixed motive, i.e., retaliation plus a legitimate business reason, must be considered.[3] *Melchi, supra,* p 583, offered four

[3] In *Clark v Uniroyal Corp,* 119 Mich App 820, 824-826; 327 NW2d 372 (1982), a case involving racial discrimination under the Fair Employment Practices Act, MCL 423.303; MSA 17.458(3), another panel of this Court concluded that once a defendant presents a legitimate nondiscriminatory reason rebutting a plaintiff's prima facie case of discrimination in the context of a motion for summary judgment, the plaintiff must put forth specific factual allegations showing a triable issue of fact as to whether the proffered reasons were a mere pretext. We decline to determine whether that analysis holds true for all cases using the *Burdine* shifting burden of proof.

standards for proving pretext in a retaliatory discharge case: (1) whether participation in the protected activity played any part in the discharge, no matter how remote; (2) whether plaintiff's protected activity was a substantial factor in the discharge; (3) whether plaintiff's protected activity was the principal, but not sole reason for the discharge; or (4) whether the discharge would have occurred had there been no protected activity. Citing *Mt Healthy City School Dist Bd of Ed v Doyle,* 429 US 274, 287; 97 S Ct 568; 50 L Ed 2d 471 (1977), a failure to rehire case alleging First Amendment violations, *Melchi* adopted the "but for" test. We disagree with this test, and adopt instead the test used in the analogous Title VII and Civil Rights Act situations.

The United States Supreme Court in *Burdine, supra,* 450 US at 256, a Title VII case, held that an employee may meet the burden of showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." This standard has been adopted by at least two panels of this Court for claims under the Civil Rights Act, MCL 37.2202; MSA 3.548(202). *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 794; 369 NW2d 223 (1985); *Clark v Uniroyal Corp,* 119 Mich App 820, 825; 327 NW2d 372 (1982). We believe this is also the proper standard for showing pretext in a failure to promote case arising under the act. Using this standard from the civil rights cases still substantially protects the right of an employer to base employment decisions on legitimate business

Matters have not even proceeded that far in the instant case, as the trial court granted summary disposition upon finding no denial of a contract right and thus erroneously found no prima facie case.

reasons. At the same time, however, it fosters the important goals of the act in protecting the public better than could be accomplished with the "but for" standard.

IV

Finally, we address the grant of summary disposition of plaintiff's Count II, in which plaintiff alleged that a substantial reason for defendant's failure to promote him was retaliation for plaintiff's exercise of his right to free speech in the form of public comments about a matter of public concern.

In *Pickering v Bd of Ed of Twp High School Dist 205,* 391 US 563, 568; 88 S Ct 1731; 20 L Ed 2d 811 (1968), the Supreme Court held that a public employee does not by virtue of public employment relinquish the First Amendment rights the employee would otherwise enjoy as a citizen to comment on matters of public interest. What is necessary is a balancing of the interests of the public employee, as a citizen, in commenting upon matters of legitimate public concern and the interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering* involved a teacher who was dismissed for sending a letter to the local newspaper criticizing the school board's past handling of tax increase proposals.

Most recently, the Supreme Court returned to the issue in *Connick v Myers,* 461 US 138; 103 S Ct 1684; 75 L Ed 2d 708 (1983). In *Connick,* Myers was an assistant district attorney strongly opposed to a proposed transfer to a different section of the criminal court. She eventually circulated a questionnaire among other assistant district attorneys soliciting their comments on office transfer policy,

office morale, the need for a grievance committee, the level of confidence in supervisors and whether employees felt pressured to work in political campaigns. She was then terminated for refusing to accept the transfer and advised that her distribution of the questionnaire was considered an act of insubordination. Myers brought a 42 USC 1983 action contending that she was wrongfully terminated for an exercise of her constitutionally protected right of free speech.

The Court focused on the issue of whether speech on a matter of public concern was involved. The Court held that when employee expression could not be fairly considered to be related to any matter of political, social or other concern to the community, government officials should have wide latitude to manage their offices without judicial intrusion in the name of the First Amendment. The Court perceived that it had the responsibility to insure that citizens are not deprived of fundamental rights by virtue of working for the government, but this did not require a grant of immunity for employee grievances not afforded by the First Amendment to those not working for the government. 461 US at 146-147.

Whether an employee's speech addresses a matter of public concern is determined by the content, form and context of the given statement as revealed by the whole record. The inquiry is one of law, not fact. 461 US at 147-148. The *Connick* Court continued:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as matter of good judgment, public officials should be receptive to constructive criticism of-

> fered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. [461 US at 149.]

With one exception, the Court found that Myers' questions did not relate to public concerns but were mere extensions of her dispute over her proposed transfer. 461 US at 148-149. The exception questioned if employees ever felt pressure to work in political campaigns on behalf of office-supported candidates. The posing of this question required the Court to determine if Myers' discharge was justified by balancing the competing interests. 461 US at 149-150.

A few additional facts are necessary to analyze the instant plaintiff's claim. Plaintiff addressed the Midland City Commission on June 21, 1982, apparently shortly after the plumbing cross-connection inspector job was eliminated from the city budget. The text of plaintiff's remarks reveals that plaintiff stated that the city manager "told a bold faced falsehood when he implied City employees were asked for their input in the budget process." In response to a statement by the city manager that no city employee had been asked to take a pay cut, plaintiff noted that he was being asked to give up at least $6,000 by being bumped into another job. He further stated, "It comes down either the City Manager was misleading or lying, or the Council was putting on an academy award performance when they were stating there would be no layoffs."

Plaintiff indicated that layoffs were his main concern in making his statement, the content of which was strictly his opinion. He added that, "I'd like to think that the Mayor and Council were duped by the City Manager and a few department heads." Plaintiff noted that his position was one of

two allegedly being eliminated because of a decrease in construction activity. Plaintiff believed, however, that no shortage of work existed for his position. He noted that the cross-connection inspector program was mandated by the Michigan Department of Public Health and was particularly important in Midland because of its industrial water use. Rather than because of a work shortage, plaintiff suspected that the positions were eliminated because of a "vindictive department head, building his image with the City Manager."

Plaintiff next noted that at least one supervisor knew of the layoffs since February, 1982. "But both supervisors lacked integrity and backbone to tell the employees involved." Plaintiff stated that during his seventeen years as a private contractor, "I never dealt as badly with people as the spineless supervisors involved with these layoffs." Had plaintiff been given more notice, he stated he "might very well have been gone by now and this foolishness could have been avoided." Plaintiff noted that the layoffs, "in addition to being poorly handled by childish department heads are also not very intelligent." Plaintiff then listed various ways in which the city would lose money through retraining, inconvenience, paperwork and the cost of arbitration, as well as creating costly dissatisfaction and employee mistrust.

The plaintiff summarized by saying that he had been candid and honest as a representative of the city and expected the same from city administrators, who apparently felt instead that the ends justified the means "as far as their own truth and accuracy are concerned." Plaintiff asked his listeners to consider what sort of good faith negotiations could take place in the future when the five bargaining units involved know that the city's negotiators play "fast and loose with the truth."

The circuit court granted summary disposition on the same ground as for Count I, the lack of denial of a contract right. As discussed above in part III, it is not necessary that plaintiff be denied a contract right. Denial of even a "subjective expectancy" of promotion can be improper if done in retaliation for a public employee's exercise of free speech on matters of public concern. See *Mt Healthy, supra,* 429 US at 283-284. The circuit court should have instead examined plaintiff's statements under the standards outlined above. The issue is whether plaintiff's speech was merely an extension of plaintiff's dispute over the elimination of his position, i.e., a complaint about defendant's treatment of him, and thus was a speech which conveyed little information "other than the fact that a single employee is upset with the status quo," *Connick, supra,* 461 US at 148, or whether plaintiff addressed matters of public concern.

This is a question of law to be decided in the first instance by the trial court. To the extent that plaintiff's speech involved matters of public concern, the circuit court on remand must balance the competing interests of plaintiff and defendant as in *Pickering* and *Connick* to determine the extent of plaintiff's rights under the First Amendment and Const 1963, art 1, § 5. The record has not been developed sufficiently for us to decide this question. We note that those constitutional provisions are worded differently.[4] Any resultant

---

[4]

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. [US Const, Am I.]

Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such

broader coverage under the Michigan Constitution should be argued before the circuit court.

In the event that defendant argues on remand that retaliation for plaintiff's exercise of free speech was not the actual reason for failing to promote plaintiff, a shifting burden of proof and pretext analysis will come into play. We call to the trial court's attention that the Supreme Court has provided a somewhat different analysis in the First Amendment area, as opposed to statutory rights such as those under Title VII. In *Mt Healthy, supra,* a failure to rehire case, the Court concluded that a rule of causation which focused on whether protected conduct played a part, substantial or otherwise, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than the employee would have occupied by doing nothing. The Court concluded that the constitutional principle would be vindicated if such an employee is placed in no worse a position than if the employee had not engaged in the conduct. By analogy to other areas involving constitutional violations, the Court held that the employee had the initial burden to prove that the conduct was constitutionally protected and that the conduct was a substantial or motivating factor in the employer's decision not to rehire. The trial court then had to determine, however, whether the employer had shown by a preponderance of the evidence that it would have reached the same employment decision even in the absence of the protected conduct. 429 US at 285-287.

Whether this analysis applies under the Michigan Constitution, or whether a "substantial factor" standard similar to that used for the whistle-

right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press. [Const 1963, art 1, § 5.]

blower claim is preferable, should be argued before the circuit court, since counsel did not have the opportunity to argue this issue there or in this appeal. See, e.g., *Boich v Federal Mine Safety & Health Review Comm,* 704 F2d 275 (CA 6, 1983), vacated on reh, 719 F2d 194 (CA 6, 1983), the court concluding on rehearing that the *Mt Healthy* analysis did indeed apply to the particular federal statute before it. The vacated opinion, however, discusses the various standards applied in mixed-motive cases.

V

The grant of summary disposition in favor of defendant is reversed as to both counts. We remand for further proceedings consistent with this opinion.