Keith SMITH, Plaintiff,

v.

CITY OF HOLLAND BOARD OF PUB-LIC WORKS, Timothy Morawski, personally and in his official capacity, Linda Esparaza, personally and in her official capacity, and named unknown persons, Defendants.

No. 1:99–CV–142.

United States District Court,
W.D. Michigan,
Southern Division.

June 8, 2000.

424

Kary Love, Holland, MI, for Keith Smith, plaintiff.

Thomas R. Wurst, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for City of Holland Board of Public Works, defendant.

ENSLEN, Chief Judge.

## OPINION

### INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment. On February 23, 1999, Plaintiff Keith Smith filed this civil rights action against the City of Holland Board of Public Works ("BPW"), Timothy Morawski, and Linda Esparaza (collectively "Defendants"). At all times relevant to this lawsuit, Morawski was the BPW's General Manager and Esparaza was the BPW's Administrative Services Director responsible for human resources.

Plaintiff's Complaint alleged three discrete causes of action. Count One alleges that Defendants violated Plaintiff's First Amendment right to freedom of speech by retaliating against him for criticizing the Defendants. Count Two alleges that Defendants violated Plaintiff's Fourteenth Amendment right to due process by failing to provide Plaintiff with a pre-termination hearing. Count Three alleges that Defendants violated Plaintiff's rights guaranteed by Article I, Sections 3 and 5 of the State of Michigan Constitution of 1964. Counts One and Two were brought pursuant to 42 U.S.C. § 1983.

On February 7, 2000, Defendants filed this Motion for Summary Judgment. With respect to Count One, Defendants argue that Plaintiff did not engage in protected conduct and that there is an insufficient connection between the allegedly protected speech and any adverse action. With respect to Count Two, Defendants argue that Plaintiff was afforded a pre-termination hearing consistent with the requirements of the Fourteenth Amendment's Due Process Clause. Finally, with respect to Count Three, Defendants argue that Plaintiff's claim must fail because the Court is bound by the Arbitrator's factual conclusion that Plaintiff's rights under the Michigan Constitution were not violated. For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion.

### FACTS

From 1995 to early 1996 Plaintiff co-hosted "Open Line," a public access television show on Holland Community Television ("HCTV"). HCTV is operated by the BPW. "Open Line" had a call-in format in which hosts discussed topics of interest with the callers.

During the early months of 1995, Plaintiff made on-the-air comments which were critical of the BPW and its management. Plaintiff's critical comments centered on two issues which had received local media attention. First, Plaintiff asserted that the BPW, and in particular Morawski, had been aware of fraudulent activity on the part of BPW meter readers and that the BPW and Morawski had failed to take any action to stop the fraud. Second, Plaintiff blamed Esparaza for a labor-management dispute at HCTV. The substance of these comments was repeated by Plaintiff in private conversations with HCTV staff.

Sometime after these comments were made, Plaintiff was approached by his immediate supervisor, Arnie DeFeyter, who informed Plaintiff that John Van Uffel, a director at the BPW, was concerned about Plaintiff's on-the-air comments and that Plaintiff needed to be careful about those comments. On May 2, 1995, Plaintiff appeared on the "Open Line" with a gag in his mouth ("gag show"). During the gag show, Plaintiff explained that management at the BPW had threatened his job because of his previous comments. This stunt received coverage in the local print media.

On June 7, 1995, DeFeyter received a written reprimand from VanUffelen because of DeFeyter's lax supervision of Plaintiff. Also, following the gag show, the Public Relations Director at the BPW began monitoring Open Line programs. This monitoring was done with the consent of Morowski.

Sometime in the late summer of 1995, the Human Relations Director for the City of Holland, Jose Reyna, began receiving complaints that Plaintiff was making inappropriate comments to BPW employees about women at the BPW. Plaintiff's comments allegedly focused on Esparaza and Karen Bastien. In November 1995, Reyna began an investigation into these complaints. As part of that investigation, Reyna interviewed Esparaza as well as other employees at HCTV. Esparaza told Reyna that Plaintiff seemed obsessed with her, that he had made negative comments about her, and that he had an "unhealthy interest" in her activities.

On December 1, 1995, Van Uffellen wrote a memorandum to Plaintiff in which Van Uffellen expressed concerns about Plaintiff's on-the-air comments, indicated that some of those comments were false, and warned Plaintiff to stop making statements which were untrue or placed BPW employees in a false light. Also, in December 1995, DeFeyter was demoted, in part, because of his lax supervision of the Plaintiff.

In January 1996, Reyna completed his investigation. Sometime prior to March 12, 1996, Morawski met privately with Esparaza, Van Uffelen, and Reyna to discuss the results of the investigation. Then, on March 12, 1996, Morawski met with Plaintiff, Van Uffellen and Reyna. During the meeting, Plaintiff received a warning from Morawski for "actions and statements" which had "fostered a hostile working environment for women." (*See* Smith Deposition—Exhibit 2.) The warning instructed Plaintiff that he "must immediately desist of any behavior that is demeaning towards women especially with regards to their performance of non-traditional roles." (*Id.*) Morawski also advised Plaintiff that Morawski considered the situation to be serious and ordered Plaintiff to keep the matter confidential.

On March 13, 1996 Plaintiff had discussions with co-workers, and individuals who were not employed by BPW, regarding the warning he had received. In those discussions, Plaintiff stated that he had been falsely accused and that he was considering legal action against Defendants.

On March 15, 1996, BPW terminated Plaintiff. In a written memorandum entitled "Termination Notice," Van Uffelen stated that Plaintiff's behavior had "made it clear" that he was "unwilling to accept corrective action." (*See* Smith Deposition Exhibit 4.) Furthermore, the memorandum

explained that Van Uffelen had concluded that Plaintiff was "defiant, insubordinate, and disrespectful." (*Id.*) The record indicates that Morawski made the final decision to terminate Plaintiff.

Plaintiff's Union grieved the termination. On January 10, 1998, Arbitrator George Roumell, Jr. found that Plaintiff had been insubordinate in discussing the March 12, 1996 warning, that some form of discipline was warranted, but that the termination was excessive. The Arbitrator converted the termination into a sixty-day suspension without pay.

## DISCUSSION

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir.1993). A Plaintiff may avoid summary judgment by presenting enough evidence to allow a reasonable jury to find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. In addition, when considering a summary judgment motion, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Adickes v. Kress*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### Count One: Official Liability

█ Plaintiff sued the BPW, as well as Morawski and Esparaza in their official capacities, for violating Section 1983. These official capacity suits are essentially suits against the City of Holland. In *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court explained that:

> Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

To establish official liability for a city officer under Section 1983 a plaintiff must show that a particular defendant is a final policymaker of the municipality such that the defendant's decisions can be considered "official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiff alleges that the BPW is liable because it makes official policy for the City with respect to the hiring and firing of BPW staff and that Morawski and Esparaza are liable in their official capacities because they were final decisionmakers at the BPW. Defendants respond that only the Holland City Council ("City Council") makes official employment policy for the City and therefore no official liability can attach to any Defendants.

█ The United States Supreme Court has been clear that the identity of final policymakers is to be determined by state law. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292. Defendants argue that the Holland City Charter ("City Charter") and the Holland City Code ("City Code") reserve the power to make official policy concerning employment decisions at the BPW to the City Council.

The City Charter provides the basic structure and powers of the City government. Section 4.1 of the City Charter provides that all legislative or policy forming powers of the City is vested in, exercised, and determined by the City Council. Section 12.4 of the City Charter establishes the BPW and sets forth its general

powers. It provides that the BPW shall, subject to the approval of the City Council, administer all electric and water utilities. Section 12.10 provides that the BPW has authority to employ personnel and carry on supervision, operation, maintenance, and the general conduct of the public works.

The Holland City Code ("City Code") states in Article II that its purpose is to "set forth and establish the personnel policies of the City." Section 2–9 outlines the general employment policies and objectives of the City. Section 2–10 provides that the personnel policies of the City Code shall be carried out in accordance with rules, regulations and policies adopted by the City Council. Section 2–11 provides that the City shall employ a personnel officer to submit proposed rules, regulations and policies to the City Council for its approval, and generally assist the City Council in carrying out the personnel policies of the City. Section 2–12 provides that units of City government, such as the BPW, may employ a personnel manager who shall report to the City's personnel officer.

Defendants assertion that only the City Council is empowered to make official employment policy decisions with respect to BPW employees is contradicted in two ways: First, Section 12.10 of the City Charter explicitly provides that the BPW may, "without the necessity of approval by the council," employ individuals to carry out its mission. Second, the uncontradicted evidence offered in the deposition of Morawski indicates that he retained final decisionmaking authority over employment decisions at the BPW.

Based upon these considerations, the Court concludes that Morawski was an official policymaker of employment policy at the BPW. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (noting that ability to make municipal decisions is necessarily the power to make final decisions); *Pembaur*, 475 U.S. at 481–84, 106 S.Ct. 1292 (same); *Meyers v. City of Cincinnati*,

14 F.3d 1115, 1118 ("If the decision to punish [plaintiff] for exercising his constitutional rights was made by the 'government's authorized decisionmakers' the City is responsible."). Morawski had authority to hire and fire BPW employees, those decisions were reviewed by no one at the BPW or the City, and those decisions were not constrained by any mandatory City employment policy. As such, the Court concludes that Morawski possessed official policymaking authority for the BPW and the City. As such, neither the BPW nor Morawski in his official capacity are protected from liability by *Monell*. However, because there is no evidence that Esparaza was empowered to make employment decisions on behalf of the BPW, there is no basis for concluding that she was an official policymaker. As such, official liability as to Esparaza is barred.

### Count One: Individual Liability

■ The Sixth Circuit has explained that three elements are necessary to establish a First Amendment retaliation claim: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected activity. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).

■ Plaintiff has established the first element of prima facie retaliation claim. The First Amendment protects the speech of a public employee if that speech comments on a matter of public concern and the speaker's interest in the speech outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs. *Connick v. Myers*, 461 U.S. 138, 146, 157, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In order to conclude that speech addresses a matter of public concern, "th[e] court must be able to fairly characterize the expression as relating to any matter of political, social, or

other concern to the community." *Rahn v. Drake Center, Inc.*, 31 F.3d 407, 412 (6th Cir.1994).

Here, Plaintiff's on-the-air comments regarding the meter reader scandal and the labor dispute, and his on-the-air comments concerning BPW's alleged efforts to chill his criticisms, constituted protected conduct because they related to matters which had been discussed in the popular media and which concerned the activities of public officials operating a public television station. *See Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding that it is impermissible to dismiss a teacher for openly criticizing the Board of Education on its allocation of school funds between athletics and education and its methods of informing taxpayers about the need for additional revenue); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (holding that the failure to rehire a teacher in the state college system who had testified before the Texas legislature in opposition to a position taken by the Regents was a violation of the First Amendment); *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that a school acted impermissibly when a public school teacher was not rehired because, allegedly, he had relayed to a radio station the substance of a memorandum relating to teacher dress and appearance). Although Defendants suggest that Plaintiff's comments involved purely private matters and should not be considered protected speech, the Court concludes that these comments are most accurately described as concerning public matters in which Plaintiff also had a private interest. *See Connick*, 461 U.S. at 148, 103 S.Ct. 1684 (holding that even though speech was motivated by personal grievances, it would still be protected conduct if it dealt with public concerns); *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 573–77 (6th Cir.1997) (same); *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir.1997) ("freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment."). As such, because Plaintiff's speech dealt with matters of public concern, although that speech may have been motivated in part by private considerations, it is protected conduct. Furthermore, the Court believes that Plaintiff's interests in the speech outweigh the employers interests in workplace efficiency because the speech concerned public officials in the performance of their official duties. As such, Plaintiff has satisfied the first element of a prima facie retaliation claim.

■■ The second element of a retaliation claim requires Plaintiff to demonstrate that each defendant took adverse action against him. Here, while Plaintiff has borne this burden with respect to Morawski and the BPW he has failed to make the necessary showing as to Esparaza.

Plaintiff alleges that a variety of actions were adverse. The Court need not address each of these assertions since it is convinced that the March 15, 1996 termination was serious enough to qualify as an adverse action. *See Thaddeus–X*, 175 F.3d at 394 (holding that an action is considered adverse if it is capable of deterring a person of ordinary firmness from continuing to engage in that conduct); *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir.1999) (explaining that actions must be serious to be adverse).

Having concluded that the termination was an adverse action, the next question is whether this action is attributable to the Defendants. On March 12, 1996, it was Defendant Morawski who warned Plaintiff about his comments toward women, read him the official reprimand, and instructed him not to discuss the warning with others. It is unclear from the record what role, if any, Esparaza played in this decision. Additionally, when Plaintiff was fired on March 15, 1996, it was Van Uffelen who drafted and presented Plaintiff with the

termination memorandum. While Morawski acknowledges that he made the final decision to terminate Plaintiff, the record does not reveal any facts which indicate how, if at all, Esparaza participated in that decision. Finally, as indicated earlier, at all times relevant to this lawsuit Morawski was the official policymaker for the BPW relative to employment decisions.

Based upon these facts, the Court concludes that while there is evidence that Morawski and the BPW took adverse action against Plaintiff, there is no evidence that Esparaza did the same. There is no evidence that Esparaza said anything at the meeting with Morawski prior to the issuance of the March 12, 1996 warning. She did not participate in the meeting in which Plaintiff was given the warning. There is an absence of any evidence tying her to the decision to terminate Plaintiff on March 15, 1996. Furthermore, there are no facts which connect Esparaza to any of the other actions which Plaintiff asserts to be adverse. As such, while Plaintiff has satisfied the second element of a retaliation claim as to Morawski, he has failed to establish this element with respect to Esparaza. Therefore, summary judgment is granted as to Esparaza in her individual capacity.

■ The third element of a retaliation claim requires the Plaintiff to show a causal relationship between the protected conduct and the adverse action. In order to make such a showing, a plaintiff must produce evidence from which an inference can be drawn that his protected activity was the likely reason for the adverse action. *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986). Here, the undisputed evidence indicates that Plaintiff made highly critical on-the-air comments about BPW, that Morawski was concerned about these comments, that Morawski consented to the monitoring of the "Open Line," and that Morawski made the decision to terminate Plaintiff within a year of those comments. Although this evidence is far from conclusive proof that a causal connection existed between the protected conduct and the adverse action, the temporal proximity between the protected conduct, Morawski's behavior indicating concern about that conduct, and the adverse action, is sufficient evidence to satisfy the third element of a prima facie retaliation claim. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997) (stating that the burden of establishing a prima facie case of retaliation "is not onerous"); *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 197 (6th Cir.1986) (holding that the combination of temporal proximity and negative statements concerning the employee's protected activity can create a triable question of fact on the issue of retaliatory motivation, even in the presence of legitimate, performance-related reasons for terminating the plaintiff).

■ Although Plaintiff has presented a prima facie case of retaliation, if the Defendants can show that he would have taken the same action in the absence of the protected activity, they are entitled to prevail on summary judgment. *Thaddeus-X,* 175 F.3d at 399. Defendants argue that the investigation into Plaintiff's conduct toward women was completely independent of any protected conduct in which Plaintiff engaged and that the March 15, 1996 termination was justified by his flagrant disregard for the order to keep the March 12, 1996 warning confidential. Plaintiff disagrees and argues that the real motivation behind the decision to terminate Plaintiff was his protected conduct, and that the investigation into his behavior toward women was pre-textual.

The Court believes that there are contested issues of material fact as to the connection between Plaintiff's protected conduct and the March 15, 1996 termination. The Court reaches this conclusion because a reasonable jury could conclude that the asserted basis for Morawski's decision to fire Plaintiff—and specifically his statement that Plaintiff was "defiant, insu-

bordinate, and disrespectful"—was based in part upon Plaintiff's protected conduct. Although Morawski argues that his sole motivation for firing Plaintiff was Plaintiff's refusal to honor the order that he not discuss his March 12, 1996 warning with anyone, there is circumstantial evidence that Morawski was already unhappy with Plaintiff for his on-the-air comments and desired to have those comments stop.

This conclusion is buttressed by the fact that the Arbitrator reduced Plaintiff's discipline from termination to a sixty-day suspension because he concluded that Plaintiff's March 13, 1996 comments were not so egregious as to warrant firing. Since the Arbitrator concluded that Plaintiff's March 13, 1996 comments did not warrant termination, a reasonable jury also might logically conclude that the firing was really motivated by Plaintiff's protected conduct and that the March 12, 1996 comments were only a pre-text for the termination.

Therefore, because a reasonable jury might conclude that Plaintiff's protected conduct was the motivating force behind his termination, there is a dispute whether Morawski and the BPW can show that they would have taken the same action in the absence of the protected activity. Summary judgment as to Plaintiff's retaliation claim against Morawski in both his individual and official capacities, and the BPW, is denied.

### Count Two: Due Process Violation

■ Plaintiff's second cause of action is the claim that his due process rights were violated because he was not provided a pre-termination hearing. The United States Supreme Court has held that a public employee dismissible only for cause has a property interest in continued employment and that the due process clause prohibits such an employee from being terminated without a pre-termination hearing. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546–547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Here, Plaintiff was called into a meeting with BPW management, advised of the reasons

he was to be terminated, and afforded an opportunity to respond. Plaintiff offers no evidence to the contrary. Therefore, because there are no issues of material fact in dispute, the Court concludes that Plaintiff's due process rights were not violated. *See Boals v. Gray,* 775 F.2d 686, 690 (6th Cir.1985) (holding that in similar factual situation, no due process violation occurred). As such, summary judgment will be granted as to all Defendants with respect to this claim.

### Count Three: Michigan Constitutional Violations

■ Plaintiff's third cause of action is the claim that his rights under Article I Sections 3 and 5 of Michigan Constitution were violated. The rights protected under these sections of the Michigan Constitution are coterminous to the rights afforded by the First Amendment of the United States Constitution. *Michigan State AFL—CIO v. Civil Serv. Comm'n,* 208 Mich.App. 479, 528 N.W.2d 811, 817 n. 17 (1995). As such, the Court believes that the same elements required for a First Amendment retaliation claim are necessary to establish a claim pursuant to Article I, Sections 3 and 5. *See Melchi v. Burns Int'l Sec. Services,* 597 F.Supp. 575, 581–83 (E.D. Mich. 1984) (applying elements of a First Amendment retaliation claim to a claim brought under Michigan state law); *Hopkins v. Midland,* 158 Mich.App. 361, 404 N.W.2d 744, 751 (1987) (same).

Because the elements of a retaliation claim pursuant to the Michigan Constitution are the same as those necessary to establish a claim under the First Amendment to the United States Constitution, Esparaza, in both her individual and official capacities, is entitled to summary judgment on Count Three because Plaintiff has failed to produce any evidence that she took any adverse action against him.

■ The remaining Defendants argue that they are entitled to summary judgment on Count Three because the Arbitrator's 1998 decision included factual findings which eliminated all support for Plaintiff's claim pursuant to the Michigan

Constitution. For the reasons discussed below, the Court does not agree.

The Court has serious doubts that the arbitration proceeding, or the Arbitrator's findings, are capable of precluding a claim brought pursuant to the Michigan Constitution on a retaliation theory. *See Arslanian v. Oakwood United Hospitals et al.,* 2000 WL 461585 (Mich.App. April 21, 2000) (holding that arbitration pursuant to collective bargaining agreement is not res judicata, and cannot collaterally estop, a civil rights claim).

Furthermore, even if the Arbitrator's findings could have preclusive effect, the Court does not believe that the findings in this case preclude liability for the Morawski or the BPW. The Arbitrator found that the March 12, 1996 order requiring Plaintiff to keep his discipline confidential was reasonable. Furthermore, the Arbitrator found that on March 13, 1996, Plaintiff violated the order by discussing his discipline with BPW employees. The Arbitrator also found that Plaintiff was properly subject to discipline. Most importantly, however, the Arbitrator found that the discipline imposed was excessive, and that only a sixty-day suspension was warranted.

These factual findings do not foreclose the possibility that Morawski violated Plaintiff's rights under the Michigan Constitution. As discussed in relation to Count One, a reasonable jury might conclude that Morawski's decision to terminate Plaintiff was motived by Plaintiff's protected conduct. Therefore, even though Plaintiff violated the March 12, 1996 confidentiality order, and Morawski may have been justified in disciplining Plaintiff, he may still have violated Plaintiff's Michigan Constitutional rights because he terminated the Plaintiff as opposed to imposing a less severe form of punishment. Furthermore, because the BPW has presented no argument as to why it cannot be held liable for the actions of its employee, Morawski, the BPW may also be liable. As such, summary judgment as to this claim is granted as to Esparaza in her individual and official capacities, but denied as to the BPW and Morawski in his individual and official capacities.

## Conclusion

For the reasons stated above, summary judgment on Count One is granted in favor of the Esparaza in both her individual and official capacities. Furthermore, summary judgment is granted on Count Two in favor of all Defendants. Finally, summary judgement is granted on Count Three in favor of Esparaza in both her individual and official capacities.

This leaves the BPW as well as Morawski in his individual and official capacities as defendants to Count One. Additionally, the BPW as well as Morawski in both his official and individual capacities remain Defendants as to Count Three.

## ORDER

In accordance with the Opinion of this date;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 34) is **GRANTED** in part and **DENIED** in part. Specifically, as to Count One, summary judgment is granted in favor of Defendant Esparaza in both her official and individual capacities. As to Count Two, summary judgment is granted as to all Defendants. As to Count Three, summary judgment is granted as to Defendant Esparaza in both her official and individual capacities.