CHANDLER v DOWELL SCHLUMBERGER, INC

Docket No. 166009. Submitted April 12, 1995, at Grand Rapids. Decided October 24, 1995, at 9:05 A.M. Leave to appeal sought.

Joseph W. Chandler brought an action in the Midland Circuit Court against Dowell Schlumberger, Inc., alleging retaliatory discharge from employment in violation of the Whistleblowers' Protection Act, MCL 15.361 et seq.; MSA 17.428(1) et seq. The court, Paul J. Clulo, J., granted summary disposition for the defendant, ruling that the act affords no relief where discharge is based on the employer's mistaken belief that the employee has reported a violation by the employer to a public authority. The plaintiff appealed.

The Court of Appeals held:

The Legislature, in enacting the Whistleblowers' Protection Act, sought to protect the public from violations of laws, rules, and regulations and to protect those employees who exercise their civic duty in reporting such violations. The protection of employees who report violations by their employers serves to encourage reporting by those employees who might otherwise be fearful of the consequences of reporting. Consistent with the purposes behind the act, the Legislature did not provide protection under the act to employees discharged because of their employers' mistaken belief that the employees reported violations to public authorities. Such employees are entitled only to those legal protections to which all other discharged employees in Michigan are entitled.

Affirmed.

D.E. SHELTON, J., dissenting, stated that the protection of the Whistleblowers' Protection Act extends to an employee whose discharge is based on the employer's mistaken belief that the employee has reported a violation and that denying such an employee the protections of the act serves to discourage the reporting of violations. The case should be reversed and remanded for trial.

REFERENCES

Am Jur 2d, Wrongful Discharge §§ 55-72.

Liability for retaliation against at-will employee for public complaints or efforts relating to health or safety. 75 ALR4th 13.

MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT.
  The Whistleblowers' Protection Act forbids an employer from
  discharging an employee on the basis that the employee has
  reported or is about to report the employer to a public author-
  ity for a violation or suspected violation of a law or regulation;
  the act affords no protection to an employee whose discharge is
  based on a mistaken belief by the employer that the employee
  has reported a violation (MCL 15.362; MSA 17.428[2]).

*R. Drummond Black,* for the plaintiff.

*Riecker, Van Dam & Gannon, P.C.* (by *Lynn S. Looby*), for the defendant.

Before: GRIBBS, P.J., and MARKMAN and D. E. SHELTON,* JJ.

MARKMAN, J. Plaintiff appeals from an opinion and order of the Midland Circuit Court granting summary disposition in favor of defendant. We affirm.

Plaintiff was employed by defendant beginning in June 1989. In January 1992, a new regulation went into effect requiring that defendant obtain certification for vehicles transporting hazardous materials on public roads. Plaintiff complained to defendant's agents regarding defendant's inconsistent compliance with the regulation. However, plaintiff did not report the violation to any public authority. On April 6, 1992, defendant was cited by the Michigan Department of Transportation for violating the regulation as a result of an anonymous tip. Shortly thereafter, defendant terminated plaintiff's employment.

On July 8, 1992, plaintiff filed a complaint alleging that defendant was liable under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.* Defendant moved for sum-

* Circuit judge, sitting on the Court of Appeals by assignment.

mary disposition pursuant to MCR 2.116(C)(8) and
(10), alleging that plaintiff had been dismissed
because of economic necessity and that plaintiff
could not recover under the WPA because he had
not engaged in the protected activity of reporting
or being about to report illegal conduct to a public
authority. The trial court granted defendant's mo-
tion pursuant to MCR 2.116(C)(10), reasoning that
because plaintiff had never reported a violation to
a public authority, he had not engaged in pro-
tected activity and thus had failed to state a prima
facie case under the WPA.

Plaintiff argues that the WPA protects an em-
ployee who has been discharged because of an
erroneous perception that the employee has re-
ported a violation of law, regulations, or rules to a
public body. We disagree.

The starting point in every case involving con-
struction of a statute is the language itself. *House
Speaker v State Administrative Bd*, 441 Mich 547,
567; 495 NW2d 539 (1993). The WPA, at MCL
15.362; MSA 17.428(2), provides the following:

>  An employer shall not discharge, threaten, or
> otherwise discriminate against an employee re-
> garding the employee's compensation, terms, con-
> ditions, location, or privileges of employment be-
> cause the employee, or a person acting on behalf
> of the employee, reports or is about to report,
> verbally or in writing, a violation or a suspected
> violation of a law or regulation or rule promul-
> gated pursuant to law of this state, a political
> subdivision of this state, or the United States to a
> public body, unless the employee knows that the
> report is false, or because an employee is re-
> quested by a public body to participate in an
> investigation, hearing, or inquiry held by that
> public body, or a court action.

This Court has stated that under the WPA a

prima facie case of retaliatory discharge requires proof (1) that the plaintiff was engaged in protected activities as defined by the act, (2) that the plaintiff was subsequently discharged, and (3) that a causal connection existed between the protected activity and the discharge. *Tyrna v Adamo, Inc,* 159 Mich App 592, 601; 407 NW2d 47 (1987). The issue in this case involves the first and third requirements. The plaintiff did not report, nor does he argue that he was about to report, his employer's violations to a public body. Thus, he was not "engaged in protected activities as defined by the act." Because he was not so engaged, there also exists a lack of a causal connection between the discharge and "the protected activity."

Plaintiff claims, however, that he is entitled to protection under the WPA as a "perceived whistleblower." In support of his claim, plaintiff points to *Sanchez v Lagoudakis,* 440 Mich 496; 486 NW2d 657 (1992), in which the Michigan Supreme Court held that the Michigan Handicappers' Civil Rights Act (MHCRA) prohibited employer discrimination based on erroneous perception of membership in a protected category. The MHCRA specifically provided a cause of action to employees who were subject to discrimination "because of a handicap." MCL 37.1202(1); MSA 3.550(202)(1); *Sanchez, supra* at 502. The Court held that the MHCRA covered those erroneously perceived of as having a handicap, reasoning:

The focus of the act was the basis of the employer's conduct—the employer's belief or intent—and not the employee's condition. If the employer acts on a belief that the employee has a handicap, and subsequently discharges or otherwise discriminates against the employee on the basis of that belief, it is inconsequential whether the employee actually has the handicap because, in either hypothesis, the

employer has undertaken the kind of discrimina-
tory action that the act prohibits.[16]

---

[16] The purpose of the act is to prohibit employers from
discriminating on the basis of handicap. It would not be consis-
tent with that purpose to relieve employers who so discrimi-
nate of liability if, although they acted in a prohibited discrimi-
natory manner, it later turns out that their belief was in fact
erroneous. The key as far as the act is concerned is that the
employer acted on the belief of a handicap.

---

[*Sanchez, supra* at 502-503.]

Although not applicable to the case before it, the
Supreme Court noted that in 1990, the Legislature
amended the definition of "handicap" to include
"[b]eing regarded as having" a handicap. *Id.* at
506.

Plaintiff urges this Court to follow the rule
established in *Sanchez* to afford protection to per-
ceived whistleblowers. Plaintiff further points to
*Polk v Yellow Freight System, Inc,* 801 F2d 190
(CA 6, 1986), in support of his claim. In *Polk,* the
court concluded that a visit to the Michigan Civil
Rights Commission was a protected activity under
the Civil Rights Act, MCL 37.2101 *et seq.*; MSA
3.548(101) *et seq.* As the court noted, the act
"prohibits discrimination or retaliation against a
person 'because the person has opposed a violation
of this act, or because the person has made a
charge, filed a complaint, testified, assisted, or
participated in an investigation, proceeding, or
hearing under this act.' [MCL 37.2701(a); MSA
3.548(701)(a)]." *Id.* at 197. The court, citing *Gifford
v Atchinson, T & S F R Co,* 685 F2d 1149, 1156, n 3
(CA 9, 1982), found no legal distinction between
filing a charge and threatening to file a charge. *Id.*
at 200. The court then reasoned:

We see no reason to distinguish between a visit
to a government agency to inquire about filing a

charge and a threat to file a charge. In both instances, the focus is not on whether the employee intends to follow through with filing the charge, but rather on whether the employer's decision to discharge was motivated by an improper desire to retaliate against an employee for pursuing rights granted by the Act. [*Polk, supra* at 200.]

The issue whether the WPA affords protection to a perceived whistleblower has not been examined in Michigan.[1] However, the issue of an employer's knowledge or belief under the WPA was addressed in *Kaufman & Payton, PC v Nikkila,* 200 Mich App 250; 503 NW2d 728 (1993). In *Kaufman & Payton,* the counterplaintiff was employed by the law firm of Kaufman & Payton, P.C. *Id.* at 252. After becoming concerned with the legality of billing procedures that she had executed, she consulted outside counsel who subsequently sent letters to the firm questioning its billing practices and addressing the counterplaintiff's future duties. *Id.* at 252-253. The counterplaintiff subsequently resigned. *Id.* at 253. Thereafter, she sent a request for investigation to the Attorney Grievance Commission and followed up with a formal complaint. *Id.* The counterplaintiff later alleged in her countercomplaint against the employer that she had been constructively discharged in violation of the WPA. *Id.* at 253-254.

This Court found that the counterplaintiff's failure to produce evidence that the firm believed, before she resigned, that the counterplaintiff

---

[1] In *Vagts v Perry Drug Stores, Inc,* 204 Mich App 481, 486; 516 NW2d 102 (1994), however, this Court held that an employee could not avail herself of the protection of the WPA because: "(1) she did not refuse to perform an illegal act, (2) she did not report or threaten to report the illegal activity, and (3) she did not file suit within the statutory period." The plaintiff in *Vagts* apparently did not raise the issue of the WPA or contend that her discharge was premised in any way upon a perception that she was engaged in "whistleblowing."

would report her complaints to responsible agencies was fatal to her cause of action under the WPA. *Id.* at 254-258. A majority of the panel explained:

> An employer's subjective fear of retaliation will not substitute for some form of notice of threatened action. Instead, an employer is entitled to objective notice of a report or a threat to report by the whistleblower. Neither Kaufman's nor the firm's knowledge that Nikkila [the counterplaintiff] had retained counsel, together with other unspecified evidence, yields an inference that the firm believed *before* she resigned that she would report her complaints to responsible agencies. [*Id.* at 257-258. Emphasis in original.]

One could conceivably argue, under *Kaufman & Payton,* that plaintiff's dismissal, which may have been based on a "fear" or "perception" of whistleblowing, is not covered under the WPA. However, the problem with the counterplaintiff's case in *Kaufman & Payton* was the lack of a causal connection between the alleged constructive discharge and protected activity under the WPA due to the employer's apparent lack of belief or knowledge of any protected activity. In other words, if the employer did not believe or know of the employee's protected activity, it would be difficult to imagine how that could have been the basis for discharge.[2]

In contrast, in the instant case, assuming plaintiff was discharged because of defendant's erroneous perception of whistleblowing by plaintiff, defendant had the belief or knowledge of whistleblowing. In fact, defendant in this case admitted

---

[2] *Kaufman & Payton* principally addresses whether, under the facts of that case, the employer believed that the counterplaintiff would report her complaints; in other words, whether there was a causal connection between discharge and protected activity.

that whistleblowing had taken place, the errone-
ous perception only being that the individual who
engaged in the activity was the plaintiff. We recog-
nize, of course, that a causal connection is never-
theless still lacking between the discharge and
actual protected activity *by the plaintiff.* However,
defendant's motivation for the discharge here
would be the same as an employer who discharges
an employee actually engaged in protected activ-
ity. The question thus becomes whether that moti-
vation is enough to provide protection under the
WPA to the terminated employee who was not
engaged in protected activity.

In construing the WPA, plaintiff, citing *Sanchez*
and *Polk,* would have us focus, not on the action of
the employee, but instead on the motive or intent
of the employer. In *Sanchez* and *Polk,* the Michi-
gan Supreme Court and the Sixth Circuit Court of
Appeals, respectively, both expressed the necessity
of focusing on the motive or intent of the employer
in the context of legislative acts seeking to prevent
discrimination.[3] However, we find *Polk* to be
clearly distinguishable from the instant case.

In *Polk,* the Sixth Circuit Court of Appeals
noted its focus on employer motive in the context
of a case in which the employee had in fact taken
some action in an effort to resist discrimination.
The court concluded that the employee was pursu-
ing rights protected by the Civil Rights Act and
was discharged as a result. In the instant case,
however, we do not address whether plaintiff's
actions constitute protected activity under the
WPA. It is undisputed that plaintiff neither re-
ported nor was about to report defendant's viola-

[3] As previously discussed, the Michigan Supreme Court noted the
purpose of the MHCRA in *Sanchez, supra* at 502-503, n 16. The purpose
of the Civil Rights Act, which was applied in *Polk,* similarly has been
noted as being the prevention of discrimination. See *Radtke v Everett,*
442 Mich 368, 379; 501 NW2d 155 (1993).

tions to a public body. We instead address
whether, despite plaintiff's inaction, he is never-
theless entitled to protection under the WPA.

In *Sanchez,* the employee was discharged be-
cause of an erroneous perception that she was
handicapped. Thus, assuming that plaintiff was
discharged because of an erroneous perception
that he was a whistleblower, *Sanchez* provides
considerable guidance. In deciding whether the
employee was entitled to protection under the
MHCRA, the Supreme Court examined the language
and purpose of the act. The Court concluded that
the act focused on the employer's belief or intent—
the process of discrimination—and that denying
protection to those erroneously perceived as hav-
ing a handicap would be inconsistent with the
MHCRA's intent of preventing discrimination based
on handicap. *Sanchez, supra* at 502, 502-503, n 16.

In deciding whether plaintiff is entitled to pro-
tection under the WPA, we similarly examine the
language and purpose of the act. The WPA provides
that an employer shall not discharge an employee

> because the employee, or a person acting on behalf
> of the employee, *reports* or is *about to report,*
> verbally or in writing, a violation or a suspected
> violation of a law or regulation or rule promul-
> gated pursuant to law of this state, a political
> subdivision of this state, or the United States to a
> public body . . . . [MCL 15.362; MSA 17.428(2).
> Emphasis added.]

In contrast with this section of the WPA is § 202(1)
(b) of the MHCRA, MCL 37.1202(1)(b); MSA
3.550(202)(1)(b), applied in *Sanchez* that protects
against discharge "because of a handicap that is
unrelated to the individual's ability to perform the
duties of a particular job or position." *Sanchez,
supra* at 502. Unlike the MHCRA, which protects

against discharge or other discrimination on the basis of inherent status, the WPA protects against discharge or other discrimination on the basis of certain concrete actions taken by the employee. However, this difference alone, while not irrelevant, does not appear to require disparate application of the two acts. The importance and effect of this distinction becomes more apparent when viewed in light of the respective purposes of the two acts.

The purpose of the MHCRA is to prevent discrimination—a process of thinking and conduct by the employer—based on handicap. As the Supreme Court reasoned, it would be inconsistent with that purpose to deny protection to those who are the victims of this process even though the perception is erroneous that they are handicapped. The harm on which the Legislature focused is the same whether the object of the discrimination was handicapped or not.

We therefore consider whether a similar inconsistency would result if protection were denied to those discriminated against because of the erroneous perception that they are whistleblowers:

> The [legislative] analysis [of the WPA] recognizes the problem the WPA was designed to alleviate as the inability to combat corruption or criminally irresponsible behavior in the conduct of government or large businesses. House Legislative Analysis, HB 5088, 5089 (February 5, 1989). The analysis goes on to say that "[t]he people best placed to observe and report violations are the employees of government and business, but employees are naturally reluctant to inform on an employer or a colleague." [*Dudewicz v Norris Schmid, Inc,* 443 Mich 68, 75; 503 NW2d 645 (1993). Emphasis omitted.]

The WPA "seeks to protect the integrity of the law

by removing barriers to employee efforts to report violations of the law" and also "to protect the public by protecting employees who report violations of laws and regulations." *Tyrna, supra* at 599-600, citing *Hopkins v City of Midland,* 158 Mich App 361, 374; 404 NW2d 744 (1987).

Violations of laws, rules, and regulations by employers do not just harm their employees but, by definition, also harm the interest of the public at large. However, the public is obviously not as likely to discover these violations as are employees. Statutory protection of the employee who reports a violation serves to encourage reporting by an employee who might otherwise be fearful of the consequences. As a result, the public is better served. In contrast, we do not believe that protection of employees who either are unable or unwilling to report violations of laws, rules, or regulations significantly encourages reporting. In fact, it is arguable that such protection under the WPA could discourage actual reporting where employees are cognizant that they will be protected absent any invocation of their civic duty as long as the employer erroneously believes the employee has engaged in such activity.

Plaintiff claims that a primary purpose of the WPA is to discourage employers from retaliation against employees who have reported or are about to report legal violations to a public body. He thus argues that denying him protection would be inconsistent with that goal. We acknowledge that penalizing and discouraging employers are inevitable effects, and presumably inherent in the purpose, of the WPA. Certainly if we look at this as the WPA's exclusive—or even principal—purpose, we could conclude, as the Supreme Court did in *Sanchez,* that protection to a perceived whistleblower is provided under the act.

However, in doing so, and focusing principally upon the employer's motive or intent under the WPA, we render it "inconsequential," *Sanchez, supra,* whether the employee actually reports or is about to report a legal violation to a public body. Accordingly, we lose sight of the fact that plaintiff has not served or attempted to serve any public interest by reporting the very harm against which the WPA ultimately seeks to protect. The WPA specifically seeks to protect the public from violation of laws, regulations, and rules. How then can we conclude that the employee's actions, which are so indispensable in facilitating this goal, are "inconsequential"? Unlike an inherent status such as a handicap, over which an employee has no control, an employee has full control over his actions. The WPA seeks to encourage those actions that assist in the protection of the public by in turn protecting the employee. Indeed, this is the only rationale for the WPA. Unlike the MHCRA, whose purpose is to prevent discrimination per se, the WPA is designed to prevent discrimination but only as a means to a particular public policy end—an end to which plaintiff has not contributed in any way.

In the instant case, plaintiff has not comported himself any differently than any other employee who did not engage in whistleblowing, the only difference being that he was discharged. Plaintiff may have been discharged for what he believes, and perhaps rightfully so, are unfair reasons. Generally, however, employment relationships in the State of Michigan are terminable at will, with or without cause, "at any time for any, or no, reason." *Vagts v Perry Drug Stores, Inc,* 204 Mich App 481, 484; 516 NW2d 102 (1994), quoting *Suchodolski v Michigan Consolidated Gas Co,* 412

Mich 692, 694-695; 316 NW2d 710 (1982).[4] Plaintiff is like any other employee unfairly discharged. To the extent that plaintiff falls within an exception to the general employment rule, he is entitled, as is any other discharged employee, to avail himself of such exception. He stands in no superior position to any other employee, however, because he has done nothing to warrant such superior position.

While the protection afforded under the WPA sets forth one exception to the rule of termination at will, we believe that this particular exception limits protection to those employees who actually report or are about to report violations of laws, rules, and regulations to a public body and who thereby serve the public interest, which is the object of the WPA.[5]

The WPA seeks to protect the public from violations of laws, rules, and regulations and to protect those employees who exercise their civic duty in reporting such violations. In determining whether a perceived whistleblower is afforded protection under the WPA, we follow the Supreme Court's analysis in *Sanchez* and examine the language and purpose of the act. In doing so, we conclude that, consistent with both the purpose and the plain language of the WPA, the Legislature has not provided protection under the act to employees discharged because of an erroneous belief that they have reported legal violations to a public body. Such employees instead are entitled only to those legal protections to which all other discharged employees in Michigan are entitled.

---

[4] See *Vagts, supra,* for a discussion regarding exceptions to this general proposition.

[5] In seeking to understand the meaning of the WPA, we offer one additional observation. When the Legislature amended the MHCRA to include specifically protection for those that are "regarded as" being handicapped, it did not similarly amend the WPA.

Therefore, plaintiff cannot establish a prima facie case under the WPA.

Plaintiff further argues that he is not disqualified from protection under the WPA because of his failure to report a *prior* violation to a public body. Contrary to the assertions in both parties' appellate briefs, we do not believe the circuit court held in this matter that failure to report previous violations disqualified plaintiff from bringing an action under the WPA. The court held, rather, that plaintiff's failure to report *any* violation, including the immediate one, placed him outside the scope of the WPA. In any event, having found that plaintiff cannot present a prima facie case of retaliatory discharge under the WPA, we find it unnecessary to decide this issue.

Affirmed.

GRIBBS, P.J., concurred.

D. E. SHELTON, J. *(dissenting)*. This is a case of first impression. It presents the question whether an employer may, with impunity, fire an employee because the employer believes the employee reported a violation of a hazardous-materials law, where it later turns out that that particular employee was not the person who reported the violation. The majority concludes that the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, does not prevent an employer from terminating an employee on the mistaken basis that the employee had reported illegal conduct. I dissent.

The act provides as follows:

> *An employer shall not discharge,* threaten, or otherwise discriminate against *an employee* regarding the employee's compensation, terms, con-

ditions, location, or privileges of employment *because the employee,* or a person acting on behalf of the employee, *reports or is about to report,* verbally or in writing, *a violation or a suspected violation of a law* or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, *or because an employee is requested by a public body to participate in an investigation,* hearing, or inquiry held by that public body, or a court action. [MCL 15.362; MSA 17.428(2). Emphasis added.]

The issue here is whether an employer may lawfully discharge an employee on the basis of a suspicion that the employee is a whistleblower. In my view, the act prohibits such conduct.

Clearly, the language of the statute demonstrates that an actual reporting of an illegal act is not necessary for protection from a retaliatory employer. It protects not only employees who do "report" a violation of law, it also protects those who are "about to report" and even those who are simply "requested . . . to participate in an investigation."

While there is no direct appellate authority, the Supreme Court has addressed this issue in the interpretation of similar remedial legislation. In *Sanchez v Lagoudakis,* 440 Mich 496; 486 NW2d 657 (1992), the Michigan Handicappers' Civil Rights Act (MHCRA) was found to prohibit employer discrimination based on a "perception" of membership in a protected category. That statute provided a cause of action at that time to employees who were subject to discrimination "because of a handicap." MCL 37.1102(1); MSA 3.550(102)(1). The statute defined "handicap" as

a determinable physical or mental characteristic

of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion." [MCL 37.1103(b)(i); MSA 3.550(103)(b)(i).]

The plaintiff there claimed that she had been constructively discharged on the basis of a groundless rumor that she had acquired immunodeficiency syndrome (AIDS). The circuit court found that the plaintiff had failed to state a claim under the act because she did not in fact have AIDS. This Court affirmed. In reversing, the Supreme Court held:

> The focus of the act was the basis of the employer's conduct—the employer's belief or intent—and not the employee's condition. If the employer acts on a belief that the employee has a handicap, and subsequently discharges or otherwise discriminates against the employee on the basis of that belief, it is inconsequential whether the employee actually has the handicap because, in either hypothesis, the employer has undertaken the kind of discriminatory action that the act prohibits. [440 Mich 502.]

The Court supported its conclusion with a footnote reference to the purpose of the act:

> The purpose of the act is to prohibit employers from discriminating on the basis of handicap. It would not be consistent with that purpose to relieve employers who so discriminate of liability if, although they acted in a prohibited discriminatory manner, it later turns out that their belief was in fact erroneous. The key as far as the act is concerned is that the employer acted on the belief of a handicap. [*Id.* at 502-503, n 16.]

The Sixth Circuit Court of Appeals, reached a similar result in *Polk v Yellow Freight System Inc,* 801 F2d 190 (CA 6, 1986). The statute at issue in that case, the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, prohibited "discrimination or retaliation against a person 'because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.' [MCL 37.2701(a); MSA 3.548(701)(a)]." *Polk, supra* at. 197. The plaintiff alleged that she had been fired because she visited an office of the Michigan Department of Civil Rights. The defendant argued that the visit was protected only if she actually intended to file a charge. After citing precedent for the proposition that threatening to file a charge was equivalent to filing a charge for purposes of the statute, the court stated:

> We see no reason to distinguish between a visit to a government agency to inquire about filing a charge and a threat to file a charge. In both instances, the focus is not on whether the employee intends to follow through with filing the charge, but rather on whether the employer's decision to discharge was motivated by an improper desire to retaliate against an employee for pursuing rights granted by the Act. [*Id.* at 200.]

A remedial statute such as the WPA must be liberally construed in favor of the persons intended to be benefited. *Dudewicz v Norris Schmid, Inc,* 443 Mich 68; 503 NW2d 645 (1993). The reasoning of *Sanchez* and *Polk* are precisely applicable to the facts of this case. This employer fired an employee because the employer thought the employee had reported illegal conduct to the authorities. The fact that the employer was wrong

does not lessen the reprehensibility of the unlawful termination or afford any solace to the innocent employee.

The majority concedes that "defendant's motivation for the discharge here would be the same as an employer who discharges an employee actually engaged in protected activity." *Ante* at 118. The majority, however, then goes on to find that prohibiting, and remedying, such an improperly motivated firing is not the intent of the WPA and attempts to distinguish the legislative purpose of the act as being somehow logically different from the purposes of the handicapper and civil rights laws. It is a flawed analysis. The majority's perception of the intent of the WPA is focused solely on the employee and concludes that the purpose of the law was solely to protect an employee who actually reports a violation of the law. That is certainly one of the purposes, but the law clearly was also intended to prohibit employer conduct which terminates an employee for unlawful reasons. The point of the WPA is to prevent such a termination. The language that prevents such a termination of an employee who is "about to report" a violation or even one who is only "requested" to appear before an investigatory body makes the intent of the statute clear. Employers are forbidden not only from terminating employees who actually "blow the whistle" but also from terminating employees they suspect are about to do so.

The majority even suggests that punishing an employer for firing an employee that the employer mistakenly thought had reported a violation of the law "could discourage actual reporting." *Ante* at 121. Such a suggestion ignores human nature and the reality of the workplace. If this employer is allowed to fire an employee just because it thought

the employee had reported a violation, the message to workers will be clear and wrong. When this Court sanctions Mr. Chandler's termination, does the majority really believe that other workers will be encouraged thereby to report illegal conduct? Hardly. Such a decision will more likely cause workers to ask themselves what the Court would allow an employer to do to an employee who actually blew the whistle if it allows the firing of a loyal employee that was wrongly suspected of doing so.

The majority chooses to focus solely on the employee's motivation and ignores that of the employer. The truth is that they are both important to the public interest and to fairness to employees. In this case, Mr. Chandler's motivation was totally innocent. There is no evidence that he ever saw or knew of any misconduct by his employer that he could or should have reported. On the contrary, the evidence is that the employer's motivation was anything but innocent when it chose to terminate Mr. Chandler for an indisputably improper purpose.

This Court has correctly held that the goals of the WPA are "to protect the integrity of the law by removing barriers to employee efforts to report violations of the law . . . and to protect the public by protecting employees who report violations of laws and regulations." *Faulkner v Flowers,* 206 Mich App 562, 568; 522 NW2d 700 (1994), quoting *Hopkins v City of Midland,* 158 Mich App 361, 374; 404 NW2d 744 (1987). An employer's readiness to retaliate against perceived whistleblowers is certainly a "barrier" to employee efforts to report illegality.

The dissenting opinion of Judge CONNOR in *Kaufman & Payton, PC v Nikkila,* 200 Mich App

250, 259; 503 NW2d 728 (1993), eloquently makes the point:

> The Whistleblowers Protection Act . . . makes it unlawful for an employer to discriminate against an employee because the employee is about to report a suspected violation of law. . . . Employers do not always wait to discriminate until they have proof that an employee is going to blow the whistle. . . . If an employer actually discriminates against an employee, it should not matter whether that discrimination is motivated by knowledge or fear. Employers should not be allowed to peremptorily retaliate against employees with impunity.

I would reverse and remand this case for trial.