106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William E. FOSTER, Plaintiff-Appellant and Cross Appellee,
v.
CITY OF SOUTHFIELD, a municipal corporation, Janet Tobin,
Personal Representative of the Estate of Rollin G. Tobin,
Deceased, and Robert Block, its agents, officers and
employees, jointly and severally, Defendants-Appellees and
Cross Appellants.
William E. FOSTER, Plaintiff-Appellee,
v.
CITY OF SOUTHFIELD, a municipal corporation, Janet Tobin,
Personal Representative of the Estate of Rollin G. Tobin,
Deceased, and Robert Block, its agents, officers and
employees, jointly and severally, Defendants-Appellants.
 Nos. 95-1032, 95-1072* and 95-1526.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1996.
 
 Before: KENNEDY, JONES and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff William Foster brought this action against his former employer, defendant City of Southfield ("City"), and two of its employees, defendants Rollin Tobin and Robert Block, claiming that he was wrongfully terminated in retaliation for his exercise of his First Amendment rights and for engaging in activity protected under Michigan's Whistleblowers' Protection Act ("WPA") and Elliott-Larsen Civil Rights Act ("ELCRA"). A jury found in favor of defendants. Plaintiff appeals, claiming that the District Court gave erroneous instructions, inappropriately restricted the scope of plaintiff's case, and erroneously dismissed his WPA claim. Defendants cross-appeal, claiming that the District Court abused its discretion in assessing attorney fees and costs as a sanction against defendants for discovery misconduct. Defendants also appeal the award of attorney fees as a sanction for statements made by defense counsel that prompted the District Court to declare a mistrial.
 
 I. Facts
 
 2
 Plaintiff was hired by defendant City in April 1990 to serve as a Public Safety Reserve Coordinator for the Southfield Fire Department ("SFD"). Plaintiff, who is African-American, was responsible for promoting the cadet and reserve programs affiliated with the SFD, and for recruiting qualified minorities and women to join the programs.
 
 
 3
 Although defendant City claims that it had long sought to diversify the SFD, there were no women or minorities among the permanent members of the SFD at the time plaintiff was hired. Following the hiring of plaintiff, the City hired several African-Americans and females as cadets and probationary firefighters. Plaintiff contends that some of the white male firefighters did not respond well to the newly diversified work force and created a hostile work environment for the minorities and women.
 
 
 4
 In January 1992, plaintiff gave a deposition in a state civil rights suit brought against the City by a female probationary firefighter, Mary Potts. In his deposition, plaintiff described several instances of racism within the fire department. In March 1992, plaintiff told a local television reporter that the SFD was sexist and racist. He recounted several incidents that he perceived as evidence of racism in the SFD.
 
 
 5
 A few days after this television interview, plaintiff agreed to speak with a newspaper reporter. Plaintiff was quoted as saying that the SFD was ignoring racism at the SFD and that the City's minority hiring plan was a "sham." On March 23, 1992, plaintiff wrote a letter to the City Administrator, defendant Robert Block, in which he accused the City of being a "do-nothing" administration and complained that the cadets had become "engine house janitors." Plaintiff sent a copy of the letter to the media.
 
 
 6
 On April 29, 1992, Director Tobin sent plaintiff a letter of reprimand criticizing plaintiff for his comments to the media. The letter stated that plaintiff's public statements had compromised his ability to perform his job duties and to act as a representative of the City.
 
 
 7
 On August 27, 1992, plaintiff filed a civil rights action in Oakland County Circuit Court. On that day, plaintiff held a press conference at City Hall. Plaintiff stated that racism existed at the SFD and that he did not believe the SFD wanted to recruit any more minorities.
 
 
 8
 On September 8, 1992, the City terminated plaintiff's employment. Plaintiff then commenced this action in U.S. District Court, claiming that he was wrongfully terminated in violation of his First Amendment rights and in violation of the WPA and the ELCRA. After the District Court stayed plaintiff's WPA claim, the jury returned a verdict in favor of defendants on plaintiff's claims under the First Amendment and the ELCRA. Following the verdict, the District Court dismissed plaintiff's WPA claim.
 
 II. First Amendment Claim
 
 9
 Plaintiff claims that the District Court improperly instructed the jury on the law as it applies to his First Amendment claim. In its defense against plaintiff's claim, the City contended that plaintiff's speech made it difficult, if not impossible, for him to perform his employment duties. Plaintiff contends that the court should have instructed the jury that it could not base its verdict on defendants' opinions and speculations as to the disruption plaintiff's speech caused, but should consider only proof of actual harm caused by the speech.
 
 
 10
 We review jury instructions as a whole to determine whether they "adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72 (6th Cir.1990). A party is not entitled to a new trial based upon alleged errors in the jury instructions unless the instructions, "viewed as a whole, were confusing, misleading, or prejudicial." Id.
 
 
 11
 For the speech of a public employee to be protected by the First Amendment, (1) the speech must be on a matter of public concern, and (2) the employee's interest in expressing himself or herself must not be outweighed by any injury the speech could cause to "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Connick v. Myers, 461 U.S. 138, 142 (1983) (quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)).
 
 
 12
 Plaintiff claims that the District Court erroneously instructed the jury as to the City's burden of proof in satisfying the second element of this test. The District Court instructed the jury as follows:
 
 
 13
 Now, the speech as such, of plaintiff, was on matters of public concern. If the speech of plaintiff interfered with the effectiveness of the City of Southfield's operations, or interfered with the performance of plaintiff's job duties, then it was--it is not protected speech.
 
 
 14
 In proving its assertion that plaintiff's speech disabled him from performing his job duties, the City, the defendant, must prove by a preponderance of the evidence, that the plaintiff's statements interfered with the effectiveness of the City of Southfield's operations, or in the performance of plaintiff's job.
 
 
 15
 As to plaintiff's first claim, since his speech dealth with matters of public concern, defendant has the burden of proving, by a preponderance of the evidence, that his speech interfered with the effectiveness of its operations, or interfered with the performance of plaintiff's job.
 
 
 16
 Plaintiff contends that the jury instructions improperly permitted defendants to defeat a First Amendment claim solely on the basis of the state's opinion and conjecture as to the disruption caused by plaintiff's speech. Plaintiff urges us to adopt a rule requiring a public employer to demonstrate objectively that an employee's speech caused actual harm.
 
 
 17
 The Supreme Court recently indicated that potential disruption caused by a public employee's speech may be sufficient to outweigh the employee's interest in self-expression. Waters v. Churchill, 114 S.Ct. 1878 (1994) (plurality opinion). In Waters, the Court held that a public employee's speech was not protected by the First Amendment because "the potential disruptiveness of the speech as reported was enough to outweigh whatever First Amendment value it might have had." Id. at 1890 (emphasis added). The Court stated that because a government employee may have a strong, legitimate interest in speaking out on public matters, the government employer "may have to make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished." Id. at 1887 (emphasis added).
 
 
 18
 Waters makes clear, then, that a government employer need not prove actual disruption, but rather merely the likelihood of disruption. Indeed, the Court stated that it gives substantial deference to "government predictions of harm" even when the danger asserted "is mostly speculative." Id. at 1887 (emphasis added). A government employer is not required "to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Connick, 461 U.S. at 152.
 
 
 19
 We hold, therefore, that the jury was entitled to consider defendants' opinions as to the disruptive effect of plaintiff's speech. Such opinions are relevant and could legitimately form the basis for the jury's verdict. The evidence presented by defendants was sufficient to support a finding that plaintiff's statements interfered with his ability to perform his job. We find no error.
 
 
 20
 III. Defense Counsel Misconduct and District Court Mismanagement
 
 
 21
 Plaintiff contends that he was denied a fair trial as a result of the combination of pretrial and trial misconduct by defense counsel and the inappropriate restriction of the scope of plaintiff's case by the District Court.
 
 A. Defense Counsel Misconduct
 
 22
 Plaintiff first asserts that defendants committed misconduct when they failed to comply with plaintiff's discovery request for notes taken by John Harper, a management consultant hired by the City to facilitate the diversification of the SFD. The notes at issue were taken in September 1991 while Harper was interviewing City management representatives concerning discrimination at the SFD. The notes reveal that SFD officials were aware in 1991 of discriminatory conduct against African-Americans and women at the SFD. Harper was retained by the City as an expert witness following the initiation of this lawsuit.
 
 
 23
 On March 29, 1993, plaintiff gave notice to Harper that he would be deposed on April 26, 1993. A Subpoena Duces Tecum directed Harper to bring to the deposition a variety of documents, including reports and statements prepared or reviewed by Harper regarding sexual or racial discrimination within the City of Southfield.
 
 
 24
 Harper did not produce the notes at issue until June 9, 1994, at his second deposition. At a hearing on July 11, 1994, the District Court ruled that defendants had not complied with the court's discovery orders, notably an order from July 15, 1993 requiring defendants to produce "any and all documentation concerning allegations of race discrimination for all of the City's Departments" and "any and all documentation concerning allegations of sex discrimination within the City's Fire Department." As a sanction, the court prohibited defendants from calling Harper as an expert witness.
 
 
 25
 Plaintiff contends that the failure to timely produce the interview notes impaired his ability to prepare his case. We conclude, as did the District Court, that the delay in producing the notes does not warrant a new trial. The trial did not begin until one month after the notes were finally produced. Moreover, plaintiff was given another opportunity on June 26, 1994 to depose Harper about the notes. The District Court's sanction was appropriate.
 
 
 26
 Plaintiff next claims that defense counsel's improper statements during opening and closing statements were unfairly prejudicial to plaintiff. We afford considerable deference to a district court's determination whether attorney misconduct warrants a new trial. See Davis v. Mutual Life Ins. Co. of New York, 6 F.3d 367, 387 (6th Cir.1993).
 
 
 27
 With regard to the opening statement, plaintiff points to the fact that counsel for defendants violated the District Court's order that the parties adhere to the text previously approved by the court. Although counsel did stray from the approved opening statement, the statement actually given was not fundamentally different from the approved version. The District Court determined that any misconduct by defense counsel in his opening statement was not unfairly prejudicial to plaintiff. We find no error.
 
 
 28
 Likewise, the few arguably improper statements made by defense counsel during closing argument were not egregious and do not constitute reversible error. The District Court ruled that the errors complained of were harmless and did not merit a new trial. We find no abuse of discretion.
 
 
 29
 B. Restrictions on the Scope of Plaintiff's Case
 
 
 30
 Plaintiff claims that the District Court improperly excluded the testimony of various witnesses who would have testified about the existence of racism and sexism in the SFD and the hostile environment that existed there. The District Court excluded the proffered testimony on the ground that it was either irrelevant or cumulative.
 
 
 31
 The issue in the case, as the District Court pointed out, was the employment relationship between plaintiff and defendants. The allegedly hostile environment at the SFD was not directly at issue. Defendants were not on trial for race or sex discrimination. Plaintiff was permitted, moreover, through the witnesses who did testify, to elicit considerable evidence that there were problems of discrimination at the SFD. More evidence was cumulative and not necessary. We find no abuse of discretion in excluding the testimony of the additional witnesses.
 
 
 32
 Plaintiff also asserts that the District Court made inappropriate comments during the course of the trial. Plaintiff cites remarks by the court suggesting that certain testimony was not relevant or was cumulative.
 
 
 33
 The district court has broad discretion to participate in the proceedings, provided that the court does not exhibit bias or assume the rule of an advocate. See Rocha v. Great American Ins. Co., 850 F.2d 1095, 1100 (6th Cir.1988). An examination of the record reveals no such bias on the part of the District Court. The comments of the court reveal an attempt to focus on relevant issues. The court's willingness to reformulate certain questions posed by defense counsel and objected to by plaintiff is not a sign of bias, but an effort to maintain an efficient trial pace. We hold that the court's comments during the testimony of witnesses were not unfairly prejudicial to plaintiff.
 
 IV. Dismissal of WPA Claim
 
 34
 Plaintiff appeals the stay and subsequent dismissal of his WPA claim. The District Court stayed the claim during the trial and dismissed the claim with prejudice following the verdict. Plaintiff asserts that the claim should be reinstated for trial or dismissed without prejudice.
 
 
 35
 The District Court stayed the WPA claim on the ground that it was duplicative of plaintiff's claim under the ELCRA. The ELCRA provides that a person shall not:
 
 
 36
 [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.
 
 
 37
 MICH.COMP. LAWS § 37.2701(a). In order to establish a prima facie case of unlawful retaliation under the Act, a plaintiff must show that he participated in activities protected by the Act and that his participation was a significant factor in an adverse employment decision. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir.1989). In the instant case, plaintiff claimed at trial that he was protected under this statute because he gave a deposition pursuant to subpoena in Mary Potts' civil rights lawsuit, because he verbally opposed the violation of civil rights of minorities and women in the SFD, and because he filed a lawsuit alleging a violation of his civil rights. This claim was sent to the jury, which found that plaintiff had not proven that defendants had retaliated against him because he had engaged in such protected conduct.
 
 
 38
 Under the facts of this case, plaintiff's ELCRA claim was essentially the same as his WPA claim. The WPA provides in relevant part:
 
 
 39
 An employer shall not discharge ... an employee ... because the employee ... reports or is about to report, verbally or in writing, a violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by a public body, or a court action.
 
 
 40
 MICH.COMP. LAWS § 15.362. The WPA protects employees who are fired for reporting any violations of law by their employer or their fellow employees. See Dudewicz v. Norris-Schmid, Inc., 443 Mich. 68, 74-75 (1993). To state a prima facie case of retaliation under the WPA, a plaintiff must establish that he was engaged in protected activity as defined by the WPA, that he was subsequently discharged, and that a causal connection existed between the protected activity and the discharge. See Chandler v. Schlumberger, 214 Mich.App. 111, 114 (1995).
 
 
 41
 The conduct that plaintiff claims was protected under the WPA was also protected under the ELCRA. The elements of the two claims are substantially the same. See Melchi v. Burns Int'l Security Servs., Inc., 597 F.Supp. 575, 581 (E.D.Mich.1984); Hopkins v. City of Midland, 158 Mich.App. 361, 378 1987). It was not error for the District Court to conclude that submitting both claims to the jury would be duplicative and potentially confusing to the jury.
 
 V. Sanctions for Discovery Misconduct
 
 42
 Defendants cross-appeal the award of attorney fees and costs as a sanction against defendants for the failure to timely produce the notes taken by John Harper during interviews with City management representatives on September 16, 1991.
 
 
 43
 We have already noted the history of plaintiff's attempts to obtain the notes at issue. At a hearing one day before the start of trial, the District Court stated that "[t]he record of this case reflects a persistent effort on the part of defendant's counsel to thwart the ability of the plaintiffs to obtain discovery and prepare their case for trial." Following the jury's verdict, the court ordered defendants to pay plaintiff's attorney fees and costs relating to plaintiff's efforts to obtain the notes. Based on plaintiff's claim for 34.75 hours of work at $200 per hour, defendants were assessed a sanction of $6950.[1]
 
 
 44
 FED.R.CIV.P. 37 permits a district court to impose sanctions for discovery misconduct. We review the imposition of sanctions for abuse of discretion. See Taylor v. Medtronics, Inc., 861 F.2d 980, 985 (6th Cir.1988).
 
 
 45
 A review of the record supports the District Court's determination that defendants' failure to produce the requested notes was grossly negligent, if not willful. Defendants' failure to turn over the notes was in violation of the District Court's order of July 15, 1993, which required defendants to produce "any and all documentation concerning allegations of race discrimination for all of the City's Departments" and "any and all documentation concerning allegations of sex discrimination within the City's fire department." The award of sanctions pursuant to FED.R.CIV.P. 37 was not an abuse of discretion.
 
 VI. Sanctions for Mistrial
 
 46
 Defendants also appeal in Case No. 95-1526 the award of attorney fees as a sanction for statements made by defense counsel that prompted the district judge to whom the case was originally assigned to declare a mistrial.
 
 
 47
 This case was originally assigned to Judge Gilmore. In opening statements, defense counsel made a number of improper statements, prompting the District Court to grant a motion by plaintiff for a mistrial. The following day, after a contentious hearing on motions in limine, the District Court declared another mistrial. Judge Gilmore then recused himself sua sponte, stating that he could no longer be fair to defendants. Plaintiff moved to assess costs and attorney fees against defendants as a result of the two mistrials. The case was then reassigned to Judge Cohn, who tried the case. Following the jury verdict for defendants, plaintiff asked the court to rule on plaintiff's earlier motion for costs and attorney fees related to the mistrials. On April 21, 1995, Judge Cohn granted plaintiff's motion, awarding plaintiff $10,000 in attorney fees pursuant to 28 U.S.C. § 1927 and the inherent power of the court.
 
 
 48
 We review the award of sanctions for abuse of discretion, whether the sanctions are awarded pursuant to 28 U.S.C. § 1927 or pursuant to the court's inherent power. See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368, 375 (6th Cir.1996).
 
 
 49
 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under § 1927 are warranted "when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' " Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1049 (6th Cir.) (quoting In re Ruben, 825 F.2d 977, 984 (6th Cir.1987)), cert. denied, 117 S.Ct. 312 (1996).
 
 
 50
 In awarding the sanctions, Judge Cohn found that the conduct of defense counsel had "directly" caused Judge Gilmore to declare a mistrial. Judge Cohn declared that the conduct of defense counsel had been "egregious." We agree that the record supports a determination that defense counsel "unreasonably and vexatiously" multiplied the proceedings. There is no requirement under § 1927 that bad faith be found. See id.; Runfola, 88 F.3d at 375. Accordingly, we find that the District Court did not abuse its discretion in awarding sanctions under 28 U.S.C. § 1927.
 
 
 51
 Because we affirm the award of sanctions pursuant to 28 U.S.C. § 1927, we do not consider whether the sanctions would be justified under the court's inherent power.
 
 VII. Conclusion
 
 52
 For the foregoing reasons, we AFFIRM the judgment of the District Court as to all assignments of error.
 
 
 
 *
 These appeals were consolidated for argument
 
 
 [1]
 Defendants also claim that the amount awarded was disproportionate to the actual harm suffered by plaintiff. Defendants claim that the delay in producing the notes necessitated the taking of fours of deposition and, therefore, that the sanction awarded should not exceed $800. However, FED. R. CIV. P. 37(b) indicates that sanctions shall include 'the reasonable expenses, including attorney's fees' caused by the failure to obey a discovery order. The costs associated with defendants failure to produce the notes as requested undoubtedly included more than four hours of additional deposition time. The deposition alone would have required at least a modest amount of preparation by plaintiff's counsel. Moreover, defendants should pay for the time expended by plaintiff in preparing the additional motions filed with the District Court relating to defendants' failure to produce the notes in a timely fashion